## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (the "Agreement"), dated as of _____, 202__, is made by and among Entrust Energy, Inc., Entrust Treasury Management Services, Inc., Entrust Energy East, Inc., Power of Texas Holdings, Inc., Knocked, Corp., Akyta Holdings, Inc., Enserve, Inc., Akyta, Inc., Energistics, Inc., SPH Investments, Inc., Akyta IP, Inc., Surge Direct Sales, Inc., Entrust Energy Operations, Inc., Strategic Power Holdings, LLC, NGAE, Inc. (collectively, the "Debtors"), Debtors and Debtors in possession, and Anna Phillips ("Trustee," and together with the Debtors, each, a "Party" and collectively, the "Parties").

## RECITALS

A.      On March 30, 2021, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Entrust Energy, Inc.*, Case No. 21-31070 (MI).

B.      On April 28, 2021, the United States Trustee for Region 7 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") consisting of (i) Brandon River Capital; (ii) MAJ Marketing, LLC; and (iii) Brookfield Properties.[1]

C.      The Debtors filed the [*Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Entrust Energy, Inc. and Its Debtor Affiliates as Modified*] on ————December 28, 2021 (as confirmed, the "Plan").[2]

D.      On December ___, 2021, the Bankruptcy Court entered an order ("Confirmation Order")[3] confirming the Plan, which became effective on _____ ("Effective Date").

---

[1]      Docket No. 95.

[2]      Docket No. ——477.  As set forth in section 1.2 of this Agreement, capitalized terms used in this Agreement but not otherwise defined herein shall have the same meanings set forth in the Plan.

E.      The Plan provides for the establishment of the Liquidating Trust ("Trust") effective on the Effective Date of the Plan.

F.      The Confirmation Order provides for the appointment of the Trustee as Liquidating Trustee of the Trust.

G.      The Trust is established for the benefit of the holders of Allowed Unsecured Claims and, solely to the extent that Allowed Unsecured Claims are paid in full, holders of Allowed Equity Interests (collectively, "Beneficiaries") entitled to distributions at each estate under the Plan.

H.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries and the other holders of Allowed Claims in accordance with the terms and conditions of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

I.      Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims or Allowed Equity Interests, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

J.      Pursuant to the Plan, the Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of

---

[3]      Docket No. ___.

1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

K.       In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to section 7.3 of the Plan and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns, and shall comprise Trust Assets for all purposes;

TO HAVE AND TO HOLD unto the Trustee; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidating Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, the "Trust Assets") are to be held by the

Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2    <u>Definitions</u>.  All terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan.  In addition, for purposes of this Agreement:

      1.2.1    "Oversight Committee" means the committee appointed pursuant to Article VIII of this Agreement.

1.3    <u>Interpretation; Headings</u>.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4    <u>Construction of Agreement</u>. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5    <u>Conflict Among Plan Documents</u>.  In the event of any inconsistency between the Plan, on the one hand, and this Agreement, on the other hand, this Agreement shall control and take precedence.  In the event of any inconsistency between this Agreement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control and take precedence.

4

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1    <u>Effectiveness of Agreement; Name of Trust</u>.    This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Entrust Liquidating Trust."

2.2    <u>Purpose of Trust</u>.    The Debtors and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan.  The Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation section 301.7701-4(d) and for the purposes set forth in this paragraph, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3    <u>Transfer of Trust Assets</u>.

2.3.1    <u>Conveyance of Trust Assets</u>.    Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries, which shall comprise Trust Assets for all purposes and shall be administered and applied as specified in this Agreement and the Plan.  The Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets.  The transfer and delivery of the Trust Assets shall be exempt from any stamp, real estate transfer, mortgage

reporting, sales, use or other similar tax to the maximum extent permitted under section 1146 of the Bankruptcy Code. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2   <u>Title to Trust Assets</u>. Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue all Causes of Action, and pursue, assert and/or and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Causes of Action or holders of Disputed Claims or Disputed Equity Interests. Without limiting the generality of the foregoing, the Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of Trust Assets. On the Effective Date, the Trust shall be substituted for the Debtors for all purposes with respect to the Trust Assets and administration of Claims and Equity Interests. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing

statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     Cooperation of Debtors.  The Debtors and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Trust Assets, of creditors' Claims and, solely to the extent of payment in full of Allowed Claims at any Estate, of holders' Equity Interests.  Such cooperation shall include, but not be limited to reasonably attempting to identify and facilitate access to (i) any evidence and information the Trustee reasonably requests in connection with the Trust's investigation, prosecution or other pursuit, or defense (as applicable) of Causes of Action and objections to Disputed Claims or Disputed Equity Interests; and (ii) former employees or Professionals of the Debtors with knowledge regarding any Causes of Action or Disputed Claims or Disputed Equity Interests.

2.6     No Retention of Excess Cash.  Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during administration of the Trust, to the extent consistent with

applicable law as to liquidating trusts (e.g., Internal Revenue Service ("IRS") Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by IRS Revenue Procedure 91-15, 1991-1 C.B. 484 and Revenue Procedure 94-45, 1994-2 C.B. 684), or to fund the reserves established pursuant to sections 3.2.12, 3.2.20 and/or 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries and other holders of Allowed Claims as promptly as reasonably practicable in accordance with the Plan and this Agreement; [provided, however, that no Beneficiary shall be entitled to receive distributions in excess of 100% of such Beneficiary's Allowed Claim or Allowed Equity Interest, as applicable.]

2.7     <u>Acceptance by Trustee</u>.   The Trustee accepts her appointment as Liquidating Trustee of the Trust.

**ARTICLE III**

**ADMINISTRATION OF TRUST**

3.1     <u>Rights, Powers, and Privileges of Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1     <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into

any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

   3.1.2 <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines she is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

  3.2 <u>Powers of Trustee</u>. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in her reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

   3.2.1 hold legal title to the Trust Assets and to any and all rights of the Debtors and the Beneficiaries in or arising from the Trust Assets;

   3.2.2 receive, maintain, conserve, supervise, prosecute, collect, settle, manage, invest, protect, and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.7 hereof;

   3.2.3 open and maintain bank accounts on behalf of or in the name of the Trust, including, in the Trustee's discretion, separate bank accounts for each of the Debtors;

3.2.4    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5    collect and liquidate all Trust Assets, including the sale of any Trust Assets;

3.2.6    protect and enforce the rights to the Trust Assets (including any Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets, including the Shell Litigation, the ERCOT Claims, claims against Nippon, claims against the parties identified as Exhibit C-1 to the Disclosure Statement, and any other potential Causes of Action; review, reconcile, compromise, settle, or object to Claims or Equity Interests of any kind; and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8    cause the Trust to retain professionals, disbursing agents, and other agents, independent contractors and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets, solely out of Trust Assets;

3.2.10   cause the Trust to review, reconcile, pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, resolve, or elect not to pursue all Causes of Action, including all Avoidance Actions;

3.2.11   calculate and make all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of

Allowed Equity Interests, as provided for in, or contemplated by, the Plan and this Agreement; provided, that because the Plan does not substantively consolidate the Debtors' estates, the Trust shall make Distributions from the Trust Assets of each Debtor to the holders of Claims and Equity Interests (if applicable) against that specific Debtor; provided, further that the Trust shall separately allocate the expenses incurred among the Estates for which the services were rendered;

3.2.12  establish, administer, adjust, and maintain the Disputed Claims Reserves;

3.2.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of her agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14  in reliance upon the Debtors' Schedules, the official Claims register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, review, and where appropriate, cause the Trust to allow or object to Claims and (if applicable) Equity Interests, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed Claims and (if applicable) Disputed Equity Interests required to be administered by the Trust;

3.2.15  in reliance upon the Debtors' Schedules, the official Claims register maintained in the Chapter 11 Cases, and (if applicable) the Debtors' filed lists of equity security holders, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Cases;

3.2.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust, and to file any and all remaining tax returns for the Debtors and the Estates, as applicable; provided, however, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.2.17  cause the Trust to abandon or donate to a charitable organization qualifying under Section 501(c)(3) of the IRC any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.19  cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21  if the Trustee deems appropriate in the Trustee's sole discretion, seek to establish a bar date for filing proofs of Equity Interest in any Debtor or otherwise to determine the holders and extent of Allowed Equity Interests in any Debtor;

3.2.22  cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.2.23  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.24  undertake all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Trust or Trustee's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

3.2.25  exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.2.26  take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     Exclusive Authority to Pursue Causes of Action.    The Trust shall have the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Causes of Action.  The Trust shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Causes of Action.  The Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may be asserted by any defendant with respect to any Cause of Action.  The Trust shall also be vested with and entitled to assert all of the Debtors' and the Estates' rights with respect to any such counterclaims, under section 558 of the Bankruptcy Code.  All costs and

13

expenses of pursuing the Causes of Action shall be satisfied first from the proceeds of such Causes of Action, and all other expenses of the Trust shall be paid or reserved for, before any proceeds of Causes of Action are paid to the Beneficiaries.  For the avoidance of doubt, all evidentiary privileges of the Debtors of any type or nature whatsoever, including the Debtors' attorney-client privilege, the work product privilege, and any other applicable evidentiary privileges of the Debtors, shall and shall be deemed to be assigned by the Debtors and shall vest in the Trust as of the Effective Date.

3.4    <u>Abandonment</u>.  If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

3.5    <u>Responsibility for Administration of Claims</u>.  From and after the Effective Date, the Trust shall become responsible for administering and paying Distributions to the holders of Allowed Claims and (if applicable) Allowed Equity Interests.  The Trust shall have the exclusive right to object to the allowance of any Claim or Equity Interest on any ground, to file, withdraw or litigate to judgment objections to Claims or Equity Interests, to settle or compromise any Disputed Claims or Disputed Equity Interests without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates.  The Trust shall also be entitled to assert all of the Debtors' and the Estates rights under, without limitation, section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6     <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors or the Creditors' Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee herself, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business.

3.7     <u>Safekeeping and Investment of Trust Assets</u>.  All moneys and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries.  The moneys received by the Trust from each Debtor shall be separately accounted for and distributed only to the holders of Allowed Claims and (if applicable) Equity Interests against each Debtor.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution on account of Allowed Claims and (if applicable) Allowed Equity Interests or payment to the Beneficiaries except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions (including such institutions' money market funds), or other temporary liquid investments, such as treasury bills; <u>provided</u>, <u>however</u>, that the scope of permissible investments shall be limited to include only those investments that a

liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise.  For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on her own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

      3.8    <u>Maintenance and Disposition of Trust and Debtor Records</u>.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust, and shall separately account for the Trust Assets allocable to each Debtor's Estate.  The Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update the Claims register maintained in the Chapter 11 Cases throughout the administration of the Trust.  To the extent of any Unsecured Claims reflected thereon, the Claims register may serve as the Trustee's register of beneficial interests held by Beneficiaries.  The Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors that are in the possession of the Debtors and reasonably necessary for the disposition of the Trust Assets and objections to Claims or (if applicable) Equity Interests except, in each case, to the extent necessary to (i) ensure compliance with any applicable law or an order of the Bankruptcy Court; (ii) preserve any applicable privilege (including the attorney-client privilege); or (iii) comply with any contractual confidentiality obligations.  The Debtors shall use commercially reasonable efforts to cooperate with the Trustee in connection with the Trustee's investigation and prosecution of Causes of Action and/or objections to Claims and Equity Interests, including with respect to

providing evidence and information as reasonably requested by the Trustee.  The books and records maintained by the Trustee and any records of the Debtors transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9     Reporting Requirements.  The Trustee shall provide the Oversight Committee, the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

3.10     No Bond Required; Procurement of Insurance.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for herself, her agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and her agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

**ARTICLE IV**

**DISTRIBUTIONS**

4.1     Distribution and Reserve of Trust Assets.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

     4.1.1  <u>Distributions</u>.  The Trustee shall cause the Trust to distribute to Beneficiaries, at least annually, the net Available Trust Cash, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to holders of Allowed Claims and (if applicable) Allowed Equity Interests.

     4.1.2  <u>Reserves; Pooling of Reserved Funds</u>.  Before any Distribution can be made to any holders of Allowed Claims and (if applicable) Allowed Equity Interests, the Trustee shall, in her reasonable discretion, establish reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed the U.S. Trustee.  In accordance with section 3.2.12 of this Agreement, the Trust may also maintain as necessary a Disputed Claims Reserve with respect to Claims and (if applicable) Equity Interests required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending the Trust's determination of whether to object to any Claim or Equity Interest.  Any such withheld Distribution shall become part of the Trust's Disputed Claims Reserves and shall be distributed to the appropriate Claimholder no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or Equity Interest, or the Claim or Equity Interest becomes Allowed.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records, by use of book entries, subledgers, or other means of recognizing the separateness of non-consolidated

estates, such that the Trust will be able to account for all distributions under the Plan separately for each Debtor, as expressly contemplated by the Plan.

        4.1.3   <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the Distributions.

        4.1.4   <u>Right to Rely on Professionals</u>.  Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

    4.2   <u>Method and Timing of Distributions</u>.  The Trustee, in her discretion, may make Distributions to Beneficiaries that are holders of Allowed Claims or (if applicable) Allowed Equity Interests at any time following the Effective Date, provided that such Distribution is otherwise permitted under, and not inconsistent with, the terms of the Plan, this Agreement, and applicable law.  The Trust may engage disbursing agents and other Persons to help make Distributions.

        4.2.1   <u>Plan Distributions in General</u>.  Except as otherwise provided in the Plan or this Agreement, the Trust or its disbursing agent shall make Distributions to Beneficiaries at the address for each such Beneficiary as indicated in either (i) the address set forth on the Proof(s) of Claim or (if applicable) proofs of Equity Interest filed by such holder, (ii) the address reflected in the Schedules if no Proof of Claim has been filed, (iii) the address reflected in the Debtors' filed lists of equity security holders if no proof of interest is filed; or (iv) the address set forth in any written notice of change of address delivered to the Trustee and filed with the Bankruptcy Court.

        4.2.2   <u>Initial Distribution Date</u>.  Distributions to Beneficiaries that are holders of Allowed Claims shall commence on the Initial Distribution Date.  Distributions to Beneficiaries

that are holders of Allowed Equity Interests in a particular Debtor shall commence, if at all, on the first Distribution Date (if any) after Allowed Claims against that Debtor are paid or reserved for in full.

4.3     <u>Withholding from Distributions</u>.  The Trustee, in her discretion, may cause the Trust to withhold from amounts distributable from the Trust to any holder of an Allowed Claim or (if applicable) an Allowed Equity Interest any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiary for all purposes of the Plan and this Agreement.

4.4     <u>Tax Identification Numbers</u>.  As more fully set forth in section 6.6 of the Plan, the Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, as a prerequisite to receiving any Distribution under the Plan or this Agreement.  If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the manner and by the deadline established by the Trustee and/or the Plan, the Beneficiary shall be deemed to have forfeited its right to any current, reserved or future Distributions provided for under the Plan and such Beneficiary's Claim or Equity Interest shall be disallowed and expunged without further order of the Bankruptcy Court.  Any such forfeited Distribution shall be deemed to have reverted back to the Trust for all purposes, including for

Distributions to other holders of Allowed Claims or Allowed Equity Interests (as applicable) against the particular Debtor in respect of which the forfeited Distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

4.5     <u>Unclaimed and Undeliverable Distributions</u>.  If any Distribution to a Beneficiary is returned to the Trustee as undeliverable and/or otherwise remains unclaimed, no further Plan Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distribution(s) by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's then-current address or taxpayer identification number.   If a Beneficiary timely provides the Trustee the necessary information within the period specified in Section 6.5 of the Plan, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest.  After the passage of the deadlines set forth in Section 6.5 of the Plan, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and all title to and beneficial interest in such undeliverable Distribution shall revert to and/or remain in the Trust automatically and without any need for further order by the Bankruptcy Court, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary, and shall be distributed in accordance with this Article IV and the Plan.  For the avoidance of doubt, undeliverable or unclaimed Plan Distributions shall be administered in accordance with Section 6.5 of the Plan as supplemented hereby.

4.5.1     <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  The Trustee may, in her sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2    Disallowance of Claims and Equity Interests; Cancellation of Corresponding Beneficial Interests.   All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes (including, but not limited to, for Distribution to holders of other Allowed Claims or Allowed Equity Interests, as applicable, against the particular Debtor in respect of which the unclaimed or undeliverable Distribution was made) pursuant to section 6.5 of the Plan shall be deemed disallowed and expunged without further action by the Trust or Trustee and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of any Beneficiary holding such disallowed Claims or Equity Interests shall be deemed canceled.   The Beneficiary with respect to any such disallowed Claim or Equity Interest shall no longer have any right, claim, or interest in or to any Distributions in respect of such Claim or Equity Interest, and further, such Beneficiary is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such disallowed Claim or Equity Interest against the Trust or Trustee.

4.5.3    Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. Unclaimed property held by the Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, any local or any foreign governmental unit.

4.6    Voided Checks; Request for Reissuance.   In accordance with section 6.5 of the Plan, Distribution checks issued to Beneficiaries shall be null and void if not negotiated within the time period set forth in section 6.5(c)(i).   Distributions in respect of voided checks shall be treated as unclaimed Distributions under section 6.5(c)(iii) of the Plan and administered under section 6.5 of the Plan and section 4.5 of this Agreement.   Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check within

sixty (60) days after first issuance thereof.  The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the dates established by section 6.5 of the Plan passes without the check being reissued or cashed.

    4.7   <u>Conflicting Claims</u>.  If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in her sole discretion, to refuse to comply with any such conflicting claims or demands.

    4.7.1   The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

    4.7.2   The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the

beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3    In acting or refraining from acting under and in accordance with this section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.8    <u>Priority of Expenses of Trust</u>.  The Trust must pay or reserve for all of its expenses before making Distributions.

## ARTICLE V

## BENEFICIARIES

5.1    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 of this Agreement and subject to the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.  For the avoidance of doubt, as of the Effective Date of the Plan and in accordance therewith, each holder of an Equity Interest in any Debtor has received or has been deemed to receive a Subordinated Beneficial Interest in the Trust, such that its status (if any) as a Beneficiary of the Trust is contingent on, and it does not become a holder of a non-contingent Beneficial Interest in the Trust until, payment in full of holders of Allowed Unsecured Claims at a particular Debtor's Estate.

5.3     <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4     <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5     <u>No Standing</u>.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6     <u>Requirement of Undertaking</u>.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7     <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may

continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8     Exemption from Registration.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9     Delivery of Distributions.  Subject to the terms of this Agreement, the Trustee shall cause the Trust to make Distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee and Oversight Committee Liability.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor any member of the Oversight Committee, nor any of their respective firms, companies, affiliates, partners,

officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, including with respect to any intercreditor or other issues that may arise as a result of the non-consolidation of Estates under the Plan, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.  In no event shall the Trustee or any member of the Oversight Committee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee or the Oversight Committee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in section 11.6 of the Plan, and the Trustee and the Oversight Committee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.  For the avoidance of doubt, neither the Trust, the Trustee nor the Oversight Committee shall be deemed to have any duty whatsoever to a holder of an Equity Interest in any Debtor unless and until the holders of Allowed Claims at a particular Debtor's Estate are paid in full and holders of Allowed Equity Interests in such Debtor's Estate become non-contingent Beneficiaries of the Trust.

6.3    <u>No Liability for Acts of Other Persons</u>.  None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     <u>No Liability for Acts of Predecessors</u>.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5     <u>No Liability for Good Faith Error of Judgment</u>.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.  The Trustee may engage and consult with her legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.7     <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust and the Claims and (if applicable) Equity Interests required to be administered by the Trust.  The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, ~~or willful misconduct.  The Trustee shall not be liable for any act or omission approved by the Committee under Article VIII of this Agreement, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence,~~ or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification.  The Trustee and the Oversight Committee, and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's, Trustee's or Oversight Committee's respective powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1     Expense of Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust.  The

amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all other actual and anticipated expenses and liabilities of the Trust.  Neither the Trustee nor the Oversight Committee or its members shall be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee, the Oversight Committee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party.  By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10    No Implied Obligations.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11    Confirmation of Survival of Provisions.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

### TAX MATTERS

7.1     <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims or Equity Interests (as applicable), followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2     <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

7.3     <u>Tax Treatment of Reserves for Disputed Claims and Disputed Equity Interests</u>. The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any Disputed Claims Reserve, including (i) filing a tax election to treat any and all Disputed Claims Reserves as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any Disputed Claims Reserve as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of any federal and/or state income tax due.

31

7.4    <u>Valuation of Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

**ARTICLE VIII**

**OVERSIGHT COMMITTEE**

8.1    <u>Appointment, Composition, and Governance of Oversight Committee</u>.  As provided for in section 7.6(b)(v) of the Plan, the Oversight Committee shall consist of those initial members identified on Exhibit A hereto. In the event that a member of the Oversight Committee resigns, the Trustee may appoint a new member, subject to the approval of the remaining member of the Oversight Committee.  If the remaining member does not approve, the member may, upon motion, request that the Bankruptcy Court determine the matter.  Notwithstanding the foregoing, in the event that fewer than three persons are willing to serve on the Oversight Committee or there shall have been fewer than three (3) Oversight Committee members for a period of thirty (30) consecutive days, then during such vacancy all references to the Oversight Committee's ongoing rights and duties in the Plan, this Agreement and the Confirmation Order will be null and void.

8.2    <u>Resignation of Oversight Committee Members</u>.  Any member of the Oversight Committee may resign upon reasonable notice to the Trustee, counsel for the Trustee, and other members of the Oversight Committee.  Fourteen (14) days' prior written notice shall constitute reasonable notice under this Section.  Any member of the Oversight Committee may be removed by the Bankruptcy Court for cause.  The Oversight Committee may authorize its own dissolution

by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded.  Unless earlier dissolved in accordance with the Plan, the Oversight Committee shall be automatically dissolved on the date the Debtors' Chapter 11 Cases are closed.

8.3    Fiduciary Duties.  Members of the Oversight Committee shall have fiduciary duties to the Beneficiaries in the same manner that members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have fiduciary duties to the constituents represented by such a committee, and shall be entitled to indemnification from the Trust in the same manner as the Trustee for service as members of the Oversight Committee from and after the Effective Date of the Plan under or in connection with this Agreement.

8.4    Limitations on Trustee's Actions.  The Trustee shall obtain the approval of the Oversight Committee by at least a majority vote prior to settling any Cause of Action where the amount in dispute (as determined by the Trustee in her sole discretion) in the complaint or other document initiating such Cause of Action exceeds $250,000.  The Trustee shall file a motion to Approve Compromise and Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 in order to settle any claim where the amount in dispute exceeds $500,000 and/or when the amount in controversy exceeds $500,000.

8.5    Payment of Fees and Expenses.  The Trustee shall pay from the Trust Assets the reasonable out-of-pocket expenses of the members of the Oversight Committee incurred solely in connection with their role as an Oversight Committee member, and not in their individual capacity, which payments shall be allocated to the specific Debtor Estate(s) incurring such fees and expense in recognition of the non-consolidation of the Debtors' Estates under the Plan.  For the avoidance of doubt, attorneys' fees incurred by an Oversight Committee member, including, but not limited to, attendance at any meetings of the Oversight Committee shall not be paid out of

the Trust Assets pursuant to this section 8.5.   The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.6     Conflicts of Interest.   If any matter under consideration by the Oversight Committee appears to involve a potential conflict of interest with any member serving on the Oversight Committee, the member with the potential conflict shall: (i) disclose to the Oversight Committee, in writing, the existence of the potential conflict promptly upon learning of the potential conflict, and (ii) the member shall be excluded from the discussion and any voting of the matter if a conflict is determined by majority vote of the remaining members of the Oversight Committee as provided herein.   In the absence of affirmative disclosure by a member having a potential conflict of interest, another member may raise such a conflict of interest.   A majority of the remaining members shall have the authority to exclude the conflicting member from any meeting and/or vote on the basis of the existence of a potential conflict of interest after such member has had an opportunity to be heard regarding the potential conflict of interest.   Any excluded member shall be granted a reasonable opportunity to address the Oversight Committee with respect to such matter upon request.   For purposes of a vote to exclude a member, such member shall be counted for purposes of determining a quorum but shall not be entitled to vote on whether a conflict of interest exists.   The member having a potential conflict of interest shall not have access to reports or work product (including draft pleadings) prepared by the Trust's advisors with respect to the matter in which the potential conflict of interest exists except to the extent determined to be appropriate by the majority of the remaining members.   For the avoidance of doubt, an Oversight Committee member shall have a conflict of interest with respect to any matter related to such member's claim against the estates and shall recuse itself from voting or making any decision related to such claim.

**ARTICLE IX**

**SELECTION, REMOVAL, REPLACEMENT
AND COMPENSATION OF TRUSTEE**

9.1     <u>Initial Trustee</u>.  The initial trustee shall be the Trustee.

9.2     <u>Term of Service</u>.   The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, dissolution, incapacity, liquidation or removal.  In the event that the Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

9.3     <u>Removal of Trustee</u>.  The Trustee may be removed at any time for cause upon a motion by any Person, including any member of the Oversight Committee, and approval by the Bankruptcy Court.

9.4     <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the Oversight Committee, the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court and served on the Oversight Committee members and the United States Trustee.  In the event of a resignation, the resigning Trustee shall render to the Oversight Committee and the U.S. Trustee a full and complete

accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

9.5     <u>Appointment of Successor Trustee</u>.  Upon the resignation, death, or removal of the Trustee, the Oversight Committee shall appoint a successor upon notice to the Bankruptcy Court. Any party in interest (including, in the case of resignation, the Trustee) may file an objection in the Bankruptcy Court if they object to the appointment of the successor Trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (a) shall consent to and accept his, her or its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her or its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor Trustee may be appointed to serve only on an interim basis.

9.6     <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his, her or its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7     <u>Trust Continuance</u>.  The resignation, death, liquidation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8     <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for her services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any

manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to holders of Allowed Claims or Allowed Equity Interests.  The terms of the compensation of the Trustee are set forth on **Exhibit B** hereto.

**ARTICLE X**

**DURATION OF TRUST**

10.1   <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

10.2   <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>.  Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3   <u>Termination after Five Years</u>.  If the Trust has not been previously terminated pursuant to section 10.2 hereof, on the fifth (5th) anniversary of the Effective Date, the Trust shall terminate and dissolve unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth (5th) anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Trust Assets.  Upon such termination, the Trustee shall distribute all of the Trust Assets to the

Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.5 of this Agreement.

10.4   <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated at any time by the Beneficiaries.

10.5   <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until her responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, her employees, professionals, and agents of any further duties, discharging and releasing the Trustee, her employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE XI

## MISCELLANEOUS

11.1   <u>Cumulative Rights and Remedies</u>.   The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2   <u>Notices</u>.  All notices to be given to Beneficiaries may be given by electronic mail, first class mail, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Trust or Trustee:

Anna Phillips, Trustee
Entrust Liquidating Trust
PO Box 500787
Atlanta GA 31150
Email: entrustliqtrust@gmail.com

with a copy to counsel:

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Attn:  James S. Carr
         Dana P. Kane
         Maeghan J. McLoughlin
Email: jcarr@kelleydrye.com
         dkane@kelleydrye.com
         mmcloughlin@kelleydrye.com

or to such other address as may from time to time be provided in written notice by the Trustee.

11.3   <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas consistent with Section 14.8 of the Plan.

11.4   <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5   <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6   <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner

or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

11.7    <u>Amendment</u>.   This Agreement may be amended by written agreement of the Trustee and the Oversight Committee or by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

11.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

11.10   <u>Severability</u>.   If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.11   <u>Further Assurances</u>.   Without limitation of the generality of section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

11.12   <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.13   <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, Oversight Committee and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

Entrust Energy, Inc.

By:

Name:

Title:

Entrust Treasury Management Services, Inc.

By:

Name:

Title:

Entrust Energy East, Inc.

By:

Name

Title:

Power of Texas Holdings, Inc.

By:

Name:

Title:

Knocked, Corp.

By:

Name:

Title:

Akyta Holdings, Inc.

By:

Name

Title:

Enserve, Inc.

By:

Name:

Title:

Akyta, Inc.

By:

Name

Title:

Energistics, Inc.

By:

Name:

Title:

SPH Investments, Inc.

By:

Name:

Title:

Akyta IP, Inc.

By:

Name

Title:

Surge Direct Sales, Inc.

By:

Name:

Title:

Entrust Energy Operations, Inc.

By:

Name:

Title:

Strategic Power Holdings, LLC

By:

Name

Title:

NGAE, Inc.

By:

Name:

Title:


Anna Phillips, not individually but solely in her capacity as Trustee under this Agreement

By:

Name:

Title:

**Exhibit A**

**Oversight Committee Members**

1. <u>Representative from the Debtors –</u> Anna Phillips
2. <u>Representative from</u> Brookfield Properties ~~(Earl Latchley)~~ <u>– Name</u>
3. <u>Representative from</u> Bandon River Capital ~~(Corey Smith)~~ <u>– Name</u>

Document comparison by Workshare 10.0 on Tuesday, December 28, 2021
2:08:05 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\mvanderweide\OneDrive - BakerHostetler\Documents\Entrust\ENTRUST - Liquidating Trust Agreement (003).doc |
| Description | ENTRUST - Liquidating Trust Agreement (003) |
| Document 2 ID | file://C:\Users\mvanderweide\OneDrive - BakerHostetler\Documents\Entrust\ENTRUST - Liquidating Trust Agreement 4895-6003-3539 v.12.docx |
| Description | ENTRUST - Liquidating Trust Agreement 4895-6003-3539 v.12 |
| Rendering set | BH Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 15 |
| Deletions | 10 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |

| Total changes | 25 |
|---|---|