United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 30, 2021

Nathan Ochsner, Clerk

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 21-31070 |
| ENTRUST ENERGY, INC.[1] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |

### ORDER APPROVING DISCLOSURE STATEMENT ON A FINAL BASIS AND CONFIRMING *AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF ENTRUST ENERGY, INC. AND ITS DEBTOR AFFILIATES AS MODIFIED*

On December 20, 2021 and December 22, 2021, the Bankruptcy Court held the Confirmation Hearing ("Confirmation Hearing") to consider final approval of the Debtors' *Amended Disclosure Statement, Pursuant to 11 U.S.C. § 1125, for Chapter 11 Plan of Liquidation of Entrust Energy, Inc. and its Affiliated Debtors, as Modified* [Docket No. 409] ("Disclosure Statement") and confirmation of the *Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Entrust Energy, Inc. and Its Debtor Affiliates* [Docket No. 402] as supplemented by the *Plan Supplement* [Docket No. 443] (the "Plan Supplement") and modified by the modification announced in open court at the Confirmation Hearing (and as further supplemented, amended, or modified, the "Plan"),[2] proposed by the above-captioned Debtors (the "Debtors").

On November 12, 2021, the Bankruptcy Court entered its *Order Granting Debtor's Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II))*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Entrust Energy, Inc. (2194); Entrust Treasury Management Services, Inc. (2347); Entrust Energy East, Inc. (3446); Power of Texas Holdings, Inc. (8159); Knocked, Corp. (0195); Akyta Holdings, Inc. (7696); Enserve, Inc. (9111); Akyta, Inc. (7560); Energistics, Inc. (3460); SPH Investments, Inc, (0271); Akyta IP, Inc. (8798); Surge Direct Sales, Inc. (7225); Entrust Energy Operations, Inc. (7479); Strategic Power Holdings, LLC (7069); NGAE, Inc. (1888). The Debtors' mailing address is Entrust Energy, Inc., 1301 McKinney Street, Suite 2950, Houston, TX 77010.

[2] Capitalized terms used but not defined herein shall have the meaning given to them in the Plan and Disclosure Statement.

*Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan; (III) Approving the Form of Various Ballots and Notices in Connection Therewith; and (IV) Approving the Scheduling of Certain Dates in Connection with Confirmation of the Plan* [Docket. No. 412] ("Disclosure Statement Order").  Among other things, the Disclosure Statement Order approved, on a preliminary basis, the Debtors' Disclosure Statement and scheduled the Confirmation Hearing.

On December 6, 2021, the Debtors filed the Plan Supplement  , which included a form of the Liquidating Trust Agreement (as the same may be modified, supplemented or amended, the "Liquidating Trust Agreement"), and designated Anna Phillips as the Liquidating Trustee ("Liquidating Trustee").

On December 16, 2021, Spring Independent School District and Grand Lakes Municipal Utility District No. 4 ("Local Taxing Entities") filed their objection to the Plan [Docket. No. 451] ("Local Taxing Entities Objection").  On December 18, 2021, the Electric Reliability Council of Texas, Inc. ("ERCOT") filed its objection to the Plan [Docket No. 461] ("ERCOT Objection").

At the Confirmation Hearing the Debtors' announced in open court certain modifications ("Plan Modifications") to the Plan which are reflected in the *Notice of Filing Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Entrust Energy, Inc. and its Debtor Affiliates as Modified* [Docket. No. 477] filed on December 28, 2021.  The Debtors' also announced in open court certain modifications to the Liquidating Trust Agreement ("Liquidating Trust Modifications") which are reflected in the *Notice of Filing Modified Liquidating Trust Agreement* [Docket. No. 478] filed on December 28, 2021.  Based upon the Plan Modifications and the Trust Modifications, as well as other representations announced in open court and reflected in this Confirmation Order, the Local Taxing Entities Objection and the ERCOT Objection were

withdrawn.

In support of Confirmation of the Plan, the Debtors filed, among other things: (i) the *Confirmation Affidavit of Alexis Keene* [Docket No. 457] ("<u>Confirmation Affidavit</u>"); and (ii) the *Declaration of Brad Daniel Regarding Solicitation and Tabulation of Votes in Connection with the Debtors' Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Entrust Energy and its Debtor Affiliates* [Docket No. 455] (the "<u>BMC Declaration</u>" of the "<u>Balloting Agent</u>"). The BMC Declaration was later amended to reflect additional late filed ballots accepted by the Court as reflected in the Notice of Filing Amended Ballot Tabulation filed on December 23, 2021 [Docket. No. 476] ("<u>Amended BMC Declaration</u>").

Based upon the Bankruptcy Court's review of, among other things, (i) the Plan, (ii) the Plan Supplement, including the Liquidating Trust Agreement, (iii) the BMC Declaration, (iv) the Amended BMC Declaration; (v) objections to Confirmation of the Plan, the Debtors' responses to the same, and settlements announced on the record at the Confirmation Hearing in connection with same, (v) exhibits admitted and other evidence presented or proffered at the Confirmation Hearing, (vi) representations and arguments of counsel at the Confirmation Hearing, (vii) the docket of the Bankruptcy Case, and (viii) other relevant factors affecting these Bankruptcy Cases, the Bankruptcy Court makes the following findings of fact and conclusions of law, and issues this Confirmation Order.

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>[3]

### <u>Jurisdiction and Venue</u>

---

[3] The findings and conclusions set forth in this Confirmation Order, together with any findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.     <u>Jurisdiction; Venue; Core Proceeding</u>. The Bankruptcy Court has jurisdiction over this Case pursuant to 28 U.S.C. §§157 and 1334. Venue in the Bankruptcy Court is proper under 28 U.S.C. §§1408 and 1409. The Debtors are and were qualified to be debtors under Bankruptcy Code §109. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**<u>Notice, Solicitation and Acceptance</u>**

B.     <u>Service of Solicitation Materials and Notices</u>.   As evidenced by certificates of service filed on the docket of these Bankruptcy Cases, all appropriate pleadings, notices, and Ballots were transmitted, mailed, and served to the extent required by the Disclosure Statement Order and Bankruptcy Rule 3017(d). The Balloting Agent mailed, by first class mail, either in paper form or on a compact disc: (a) a copy of the Disclosure Statement Order; (b) a copy of the Disclosure Statement; (c) a copy of the Plan; (d) a Notice of Confirmation Hearing; (e) an appropriate Ballot; and (f) a self-addressed return envelope (collectively, the "<u>Solicitation Package</u>") to Holders of all Claims and Equity Interests.

C.     <u>Adequate Notice of Confirmation Hearing</u>. In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, and the Disclosure Statement Order, adequate notice of the time for filing objections to Confirmation of the Plan and the authorizations and transfers contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holders of Claims and Equity Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy  Rules. No other or further notice of the Confirmation Hearing or Confirmation of the Plan is necessary or required.

D.     <u>Adequate Notice of Plan Supplement</u>.  Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement, including the Liquidating Trust Agreement.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required.  The Debtors are authorized to modify the Plan Supplement and Liquidating Trust Agreement following entry of this Confirmation Order in accordance with section 1127 of the Bankruptcy Code.

E.     <u>Good Faith Solicitation (11 U.S.C. §1125(e))</u>.  Based on the record, the Debtors and their respective employees, managers, members, attorneys, affiliates, agents, and professionals (including but not limited to their attorneys, financial advisors  accountants, solicitation agents, and other professionals that have been retained by such parties) (collectively, the "<u>Plan Parties</u>") have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) the solicitation of acceptances or rejections of the Plan, (2) the offer, sale, issuance and  distribution of the Liquidating Trust Beneficial Interests under the Plan, and (3) their participation in the other activities described in Bankruptcy Code § 1125.  Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. In addition, all procedures used to distribute the Solicitation Package to holders of Claims and Equity Interests were fair, and conducted in accordance with the Bankruptcy Code, the Rules, the Local Rules, and all other applicable rules, laws and regulations.

Therefore, the Plan Parties are entitled to the full protections afforded by Bankruptcy Code § 1 125(e).

## Compliance with Bankruptcy Code § 1129

F.     <u>The Debtors have satisfied their burden of proof.</u>  Debtors, as the plan proponents, have the burden to prove the requirements for confirmation by a preponderance of the evidence.[4] Based on the findings and conclusions set forth herein, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Debtors have satisfied their burden of proof as to Confirmation of the Plan, and the Plan satisfies all requirements for confirmation set forth in Bankruptcy Code § 1129.

G.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(l).

  a.  <u>Plan Compliance with Bankruptcy Code §1122</u>.    The Plan complies with the classification requirements of the Bankruptcy Code. Classification of claims and interests is governed by Bankruptcy Code § 1122, which provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). This section does not require that claims or interests within a particular class be identical.[5] A plan proponent has flexibility in classifying claims, so long

---

[4] *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").

[5] *In re DRW Property Co.,* 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); *see also Phoenix Mut. Life Ins. Co. v. Greystone Ill Joint Venture (In re Greystone 111 Joint Venture),* 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

as the proponent has some reasonable basis for the classification or the creditor agrees to it.[6]

b.  Under the Plan, the Claims or Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within that Class. In addition to Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which need not be classified, the Plan classifies Claims and Equity Interests as follows:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 2 | Ad Valorem Tax Claims Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 3 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 4 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 5 | Convenience Class Unsecured Claims Against Entrust Energy, Inc. | Impaired | Yes |
| Class 6 | General Unsecured Claims Against Entrust Energy, Inc. | Impaired | Yes |
| Class 7 | Equity Interests in Entrust Energy, Inc. | Impaired | Yes |
| Class 8 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Treasury Management Services, Inc. | Unimpaired | No (deemed to accept) |

---

[6] *See In re Jersey City Med. Center,* 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case."). *A* plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support separate classification. *In re Briscoe Enterprises.,* 994 F.2d at 1167 (quotations omitted); *see also In re The Heritage Org., L.L.C.,* 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

| Class 9 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Treasury Management Services, Inc. | Unimpaired | No (deemed to accept) |
|---|---|---|---|
| Class 10 | General Unsecured Claims Against Entrust Treasury Management Services, Inc. | Impaired | Yes |
| Class 11 | Equity Interests in Entrust Treasury Management Services, Inc. | Impaired | Yes |
| Class 12 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy East, Inc. | Unimpaired | No (deemed to accept) |
| Class 13 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy East, Inc. | Unimpaired | No (deemed to accept) |
| Class 14 | Convenience Class Unsecured Claims Against Entrust Energy East, Inc. | Impaired | Yes |
| Class 15 | General Unsecured Claims Against Entrust Energy East, Inc. | Impaired | Yes |
| Class 16 | Equity Interests in Entrust Energy East, Inc. | Impaired | Yes |
| Class 17 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Power of Texas Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 18 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Power of Texas Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 19 | Convenience Class Unsecured Claims Against Power of Texas Holdings, Inc. | Impaired | Yes |
| Class 20 | General Unsecured Claims Against Power of Texas Holdings, Inc. | Impaired | Yes |
| Class 21 | Equity Interests in Power of Texas Holdings, Inc. | Impaired | Yes |

| Class 22 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Akyta Holdings, Inc. | Unimpaired | No (deemed to accept) |
|---|---|---|---|
| Class 23 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 24 | General Unsecured Claims Against Akyta Holdings, Inc. | Impaired | Yes |
| Class 25 | Equity Interests in Akyta Holdings, Inc. | Impaired | Yes |
| Class 26 | Priority Non-Tax Claims Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 27 | Secured Claim of JP Morgan Chase Bank (NA) Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 28 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 29 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 30 | Convenience Class Unsecured Claims Against Enserve, Inc. | Impaired | Yes |
| Class 31 | General Unsecured Claims Against Enserve, Inc. | Impaired | Yes |
| Class 32 | Equity Interests in Enserve, Inc. | Impaired | Yes |
| Class 33 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Akyta, Inc. | Unimpaired | No (deemed to accept) |
| Class 34 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta, Inc. | Unimpaired | No (deemed to accept) |
| Class 35 | Convenience Class Unsecured Claims Against Akyta, Inc. | Impaired | Yes |
| Class 36 | General Unsecured Claims Against Akyta, Inc. | Impaired | Yes |

| Class 37 | Equity Interests in Akyta, Inc. | Impaired | Yes |
|---|---|---|---|
| Class 38 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Energistics, Inc. | Unimpaired | No (deemed to accept) |
| Class 39 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Energistics, Inc. | Unimpaired | No (deemed to accept) |
| Class 40 | General Unsecured Claims Against Energistics, Inc. | Impaired | Yes |
| Class 41 | Equity Interests in Energistics, Inc. | Impaired | Yes |
| Class 42 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against SPH Investments, Inc. | Unimpaired | No (deemed to accept) |
| Class 43 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against SPH Investments, Inc. | Unimpaired | No (deemed to accept) |
| Class 44 | General Unsecured Claims Against SPH Investments, Inc. | Impaired | Yes |
| Class 45 | Equity Interests in SPH Investments, Inc. | Impaired | Yes |
| Class 46 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Akyta IP, Inc. | Unimpaired | No (deemed to accept) |
| Class 47 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta IP, Inc. | Unimpaired | No (deemed to accept) |
| Class 48 | General Unsecured Claims Against Akyta IP, Inc. | Impaired | Yes |
| Class 49 | Equity Interests in Akyta IP, Inc. | Impaired | Yes |
| Class 50 | General Unsecured Claims Against Strategic Power Holdings, LLC | Impaired | Yes |
| Class 51 | Equity Interests in Strategic Power Holdings, LLC | Impaired | Yes |
| Class 52 | General Unsecured Claims Against NGAE, Inc. | Impaired | Yes |

| Class 53 | Equity Interests in NGAE, Inc. | Impaired | Yes |
|----------|-------------------------------|----------|-----|
| Class 54 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Surge Direct Sales, Inc. | Unimpaired | No (deemed to accept) |
| Class 55 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Surge Direct Sales, Inc. | Unimpaired | No (deemed to accept) |
| Class 56 | General Unsecured Claims Against Surge Direct Sales, Inc. | Impaired | Yes |
| Class 57 | Equity Interests in Surge Direct Sales, Inc. | Impaired | Yes |
| Class 58 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy Operations, Inc. | Unimpaired | No (deemed to accept) |
| Class 59 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy Operations, Inc. | Unimpaired | No (deemed to accept) |
| Class 60 | General Unsecured Claims Against Entrust Energy Operations, Inc. | Impaired | Yes |
| Class 61 | Equity Interests in Entrust Energy Operations, Inc. | Impaired | Yes |
| Class 62 | Convenience Class Unsecured Claims Against Knocked Corporation. | Impaired | Yes |
| Class 63 | General Unsecured Claims Against Knocked Corporation. | Impaired | Yes |
| Class 64 | Equity Interests in Knocked, Corp. | Impaired | Yes |

c.  Valid business, legal, and factual reasons exist for the separate classification of each of these Classes of Claims and Equity Interests, and there is no unfair discrimination or gerrymandering between or among the holders of Claims and Equity Interests.

d.  In sum, all Claims and Equity Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of Bankruptcy Code § 1122.

e.  The Plan Complies with Bankruptcy Code § 1123. In accordance with Bankruptcy Code § 1123(a), the Plan: (1) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), 507(a)(8); (2) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (3) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of their respective Claim or Equity Interest; (5) provides for adequate means for the Plan's implementation; (6) is a liquidating plan and accordingly (a) provides for the cancelation, termination, and extinguishment of the Equity Interests in the Debtors, and (b) does not provide for either the Debtors or the Liquidating Trust to issue securities other than the Beneficial Interests (which are not equity securities) to any Person; and (7) contains only provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and Liquidating Trust Committee members on and after the Effective Date. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan

and the administration of the Estates.    Therefore, the Plan satisfies the requirements of Bankruptcy Code § 1123(a) and (b).

H.    <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.    In accordance with Bankruptcy Code § 1129(a)(2), the Debtors have complied with the applicable provisions of the Bankruptcy Code.    The Debtors are proper debtors under Bankruptcy Code § 109. The Debtors have complied with the applicable provisions of the Bankruptcy Code (including §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

M.    Votes to accept or reject the Plan were solicited by the Plan Parties after the Court approved the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).

N.    The Plan Parties have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, in good faith within the meaning of Bankruptcy Code § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Section 13.4 of the Plan.

O.    The Debtors and their respective members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such

distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

        P.        <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). A plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[7] "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan . . . ."[8]

        Q.        The Plan is proposed in good faith and not by any means forbidden by law. The Debtors commenced these cases case with the legitimate and honest purpose of developing an orderly process to liquidate their assets and pay legitimate claimants while maximizing value. In accordance with Bankruptcy Code § 1129(a)(3), the Debtors have proposed the Plan in good faith and not by any means forbidden by law. The treatment of holders of Claims and Equity Interests contemplated by the Plan was negotiated and consummated at arms'-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan. Furthermore, the Plan represents extensive arms'-length negotiations among the Debtors and other parties in interest, as well as their respective legal and financial advisors, and reflects the best interests of the Debtors' Estates and holders of Claims

---

[7] *In re T-H New Orleans Ltd. P'ship,* 116 F.3d at 802; *In re Madison Hotel Assocs.,* 749 F.2d 410, 424-425 (7th Cir. 1984).
[8] *Brite* v. *Sun Country Dev. (Jn re Sun Country Dev.),* 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.,* 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003).

and Equity Interests.

R.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.   In

accordance with Bankruptcy Code § 1129(a)(4), all payments and distributions, made or to be

made by the Debtors for services or for costs and expenses in, or in connection with, the

Bankruptcy Cases, or in connection with the Plan and incident to the Bankruptcy Cases, have been

approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise

ordered by the Bankruptcy Court.

S.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.   The Debtors have

complied with Bankruptcy Code § 1129(a)(5). The Persons that must be identified pursuant to

Bankruptcy Code § 1129(a)(5) have been identified. These provisions of the Plan are consistent

with the interests of Claim and Equity Interest holders and with public policy, thereby satisfying

Bankruptcy Code § 1129(a)(5).

T.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate

change that requires regulatory approval.  Thus, Bankruptcy Code § 1129(a)(6) is satisfied.

U.     <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.  Bankruptcy Code §

1129(a)(7), the "best interests of creditors test," requires that, with respect to each impaired class,

each holder of a claim or interest in the class:

> i.     has accepted the plan; or
>
> ii.    will receive or retain under the plan on account of such
> claim or interest property of a value, as of the effective date of the
> plan, that is not less than the amount that such holder would so
> receive or retain if the debtor were liquidated under chapter 7 of
> this title on such date.

V.     The evidence admitted at the Confirmation Hearing, establish that the

requirements of Bankruptcy Code § 1129(a)(7) are satisfied by the Plan.  In accordance with

Bankruptcy Code § 1129(a)(7), with respect to Classes of Impaired Claims or Impaired Equity Interests, each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

  W. <u>Acceptance or Rejection of Certain Classes  (11 U.S.C.  § 1129(a)(8))</u>.  Classes 1-4, 8, 9, 12, 13, 17, 18, 22, 23, 26-29, 33, 34, 38, 39, 42, 43, 46, 47, 54, 55, 58, and 59 are Unimpaired and thus is deemed to have accepted the Plan.  Classes 5-7, 10, 11, 14-16, 19-21, 24, 25, 30-32, 35-37, 40, 41, 44, 45, 48-53, 56, 57, 60-64 are Impaired and entitled to vote to accept or reject the Plan.   Of those Classes: (i) 5, 6, 15, 19, 20, 30, 35, and 52 voted to accept the Plan and Class 31 indicated its acceptance of the plan terms in open court but did not formally vote in favor of the Plan (collectively, the "<u>Accepting Classes</u>"); (ii) Classes 10, 24, 40, and 60 no longer had any voting creditors following the withdrawal of the claims asserted by Duquesne Light Company; and (iii)  Classes 14, 36, 44, 48, 50, 56, 60, 62 did not vote on the Plan (collectively, the <u>Non-Voting Classes</u>"). The failure of the Non-Voting Classes to accept the Plan does not prevent Plan Confirmation with respect to the other Debtors because no junior class is receiving or retaining anything of value on account of such junior Claims or Equity Interests and those Debtors have at least one accepting Class of Impaired Claims.

  X. <u>Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9))</u>. The Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(l) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

  Y. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Because Classes 44, 48, 50, 56, 60, 62, and 64 did not vote on the Plan and no Class of Impaired Claims voted to

accept the Plan in the cases of SPH Investments, Inc., Akyta IP, Inc., Strategic Power Holdings, LLC, Surge Direct Sales, Inc., Entrust Energy Operations, Inc., and Knocked Corporation, those cases will not be confirmed in connection with this Confirmation Order. The remaining Debtors each either have at least one Impaired Accepting Class in accordance with Bankruptcy Code § 1129(a)(l0) or they do not have any Impaired Claims.

Z. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The evidence proffered or adduced at the Confirmation Hearing with respect to feasibility (1) is persuasive, credible, and accurate as of the dates such analysis was prepared, presented, or proffered, (2) utilizes reasonable and appropriate methodologies and assumptions, (3) has not been controverted by other evidence, (4) establishes that Confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation of the Liquidating Trust except with respect to such liquidation proposed in the Plan. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

AA. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. In accordance with Bankruptcy Code § 1129(a)(12), to the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date and the Debtors or the Liquidating Trust, as applicable, shall continue to pay such fees until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

BB. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. In accordance with Bankruptcy Code § 1129(a)(13), the Plan does not alter retiree benefits to the extent any such benefits currently exist.

CC.     Other Provisions of 11 U.S.C. § 1129(a). The provisions of 11 U.S.C. §§ 1129(a)(14), (a)(15), and (a)(16) are not applicable to the Debtors or the Plan.

DD.     Confirmation of Plan Over Nonacceptance of Impaired Class (11 U.S.C. § 1129(b)). The Plan may be confirmed pursuant to Bankruptcy Code § 1129(b) notwithstanding that the requirements of Bankruptcy Code § 1129(a)(8) have not been met because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all the other requirements of Bankruptcy Code § 1129(a) and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting classes.

EE.     The Plan is "fair and equitable" with respect to the Non-Voting Classes because no junior Class of Claim or Equity Interests will receive or retain any property under the Plan on account of such Claims or Equity Interests.

FF.     Only One Plan – 11 U.S.C. §1129(c). The Bankruptcy Court finds and concludes that, other than the Plan (including previous versions thereof), no other plan has been filed in the Bankruptcy Cases. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

GG.     Principal Purpose (11 U.S.C. § 1129(d)). No Person, including but not limited to the Securities and Exchange Commission ("SEC") or any other governmental entity or unit, has requested that the Bankruptcy Court deny Confirmation on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of section 5 of the 1933 Act. The Bankruptcy Court finds that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

**Appeal of this Confirmation Order**

HH.     The reversal or modification on appeal of this Confirmation Order does not

affect the validity of the authorizations and transfers contemplated under the Plan with respect to an entity that acquired property or an interest in property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorizations and transfers contemplated under the Plan are stayed pending appeal.

## Securities Findings and Conclusions/Exemptions

II.    <u>Issuance of Liquidating Trust Interests</u>. The Liquidating Trust constitue or will constitute a "successor" and a "newly organized successor" to the Debtors under the Plan solely for purposes of Bankruptcy Code §§ 1145 and 1125(e) and the Debtors has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the Liquidating Trust Beneficial Interests. With respect to the offer, sale, issuance and distribution of the Beneficial Interests (to the extent such interests and/or rights constitute securities under the 1933 Act or any State or local law) pursuant to the terms of the Plan, (1) neither the Debtors nor the Liquidating Trust are underwriters within the meaning of Bankruptcy Code § 1145(b), (2) the offer, sale, issuance and distribution of the Beneficial Interests shall be pursuant to the Plan, (3) the Beneficial Interests are to be distributed in exchange for Claims against the Debtor, and (4) the Beneficial Interests (to the extent constituting a security under the 1933 Act or any State or local law), constitute securities of a successor or newly organized successor to the Debtors under the Plan for purposes of Bankruptcy Code §§ 1145 and l 125(e). The findings of fact and conclusions of law in this Paragraph shall be binding upon all parties to the Bankruptcy Cases, the Debtors, the Liquidating Trust, and its Liquidating Trustee(s), the SEC, and all other federal, state, and local regulatory enforcement and other agencies.

JJ.    <u>Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C.  § 1146(a))</u>.

The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any security, and the making or delivery of any instrument of transfer pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

### Authorizations and Transfers Pursuant to the Plan

KK.    <u>Legal Binding Effect</u>.  The provisions of the Plan will bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

LL.    <u>Exculpation</u>. The exculpation provisions are an integral part of the Plan and represent a valid exercise of the Debtors' business judgment. Pursuing any such claims against the Exculpation Parties is not in the best interest of the Debtors' estate and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The failure to effect the release and exculpation provisions of the Plan would impair the Debtors' ability to confirm the Plan, and the exculpation provisions of the Plan are fair, equitable and reasonable. Accordingly, the compromises and settlements embodied in the exculpation provisions described in the Plan are approved.

MM.    <u>Issuance of Beneficial Interests</u>. The issuance and distribution of the Beneficial Interests in the Liquidating Trust in accordance with the provisions of the Plan are reasonable and necessary.

NN.    <u>Transfer of Liquidating Trust Assets</u>. The Debtors' transfer of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date in accordance with the Plan and the Trust Agreements is reasonable and necessary and made in accordance with applicable state law

and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and l123(b)(3).

OO.     <u>Rejection of Executory Contracts and Unexpired Leases</u>. The rejection of executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order is (i) a sound and reasonable exercise of the Debtors' business judgment, (ii) in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and (iii) necessary for the implementation of the Plan.

PP.     <u>Plan Documents Valid and Binding</u>. All other documents reasonably necessary to implement the Plan, including, without limitation, the Liquidating Trust Agreement, have been negotiated in good faith and at arms' length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtors and their Estates and have been negotiated in good faith and at arms' length.

QQ.     <u>Compliance with Bankruptcy Rule 3016</u>. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Debtors that submitted it and filed it are appropriately identified. The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

<u>**The Liquidating Trust Is Not A Successor to the Debtors**</u>

RR.     Except for purposes of compliance with Bankruptcy Code § 1145, the Liquidating Trust and its affiliates, successors, or assigns are not, as a result of actions taken in connection with the Plan, a successor to the Debtors or a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The Trusts shall be deemed to be a successor to the Debtors only for purposes of compliance with Bankruptcy Code § 1145 and for no other reason under any state or federal law.

**Miscellaneous Provisions**

SS.       Findings of Fact and Conclusions of Law on the Record. All findings of fact and

conclusions of law announced by this Bankruptcy Court on the record in connection with

Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by

reference. To the extent that any of the findings of fact or conclusions of law constitutes an order

of this Court, they are adopted as such.

**ORDER**

Based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED

that:

1.       Confirmation of Plan. The Plan and all of its provisions are APPROVED and

CONFIRMED.   A copy of the Plan is attached hereto as **Exhibit A**. Except as otherwise set forth

in this Confirmation Order, the Plan is valid and enforceable pursuant to its terms and the terms of

the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.       Objections Overruled. All objections that have not been withdrawn, waived,

resolved by stipulation, or settled are OVERRULED on the merits.

3.       Approval of Plan Documents. The form and substance of the Plan documents,

including the Plan, Disclosure Statement, Plan Supplement and any documents related thereto

(collectively, the "Plan Documents"), are hereby APPROVED**.** The execution, delivery, and

performance by the Debtors, the Liquidating Trust and its Liquidating Trustee(s) of the Plan

Documents are authorized and approved without the need for further corporate or other

organizational action or further Order or authorization of the Bankruptcy Court. The Debtors are

authorized and empowered to make any and all modifications to any and all documents included

as part of the Plan and Plan Supplement that may be agreed to by the parties thereto and that are

consistent with the Plan and the terms of this Confirmation Order.  The terms of the Plan, the Plan Supplement, and all other relevant and necessary documents shall be effective and binding as of the Effective Date of the Plan.

4.    <u>Authority</u>.

a.    The Plan Parties, the Liquidating Trust, and the Liquidating Trustee are authorized and empowered to take such actions and do all things as may be necessary or required to implement and effectuate the Plan, the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust Agreement, and this Confirmation Order.

b.    The Plan Parties, the Liquidating Trust, and the Liquidating Trustee are authorized, empowered, and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents (collectively, "<u>Documents</u>"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transfers contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court or further action by their respective directors, stockholders, managers, members, or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, managers, members, or other beneficiaries of such entities.

c.    The Debtors are further authorized, empowered, and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable governmental authority any and all amended and/or restated certificates or articles of incorporation, organization, or formation or amendments to limited liability company agreements, operating agreements, or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental authorities with respect to compliance with Bankruptcy Code § 1123(a)(6).

d.    This Confirmation Order shall constitute all approvals and consents, if any, required by all applicable business organization, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the Plan and all actions authorized

by this Confirmation Order.

e.  The Debtors, and from and after the Effective Date, the Liquidating Trustee, are authorized to execute and perform any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and to certify or attest to any of the foregoing actions taken by the Debtors. The execution of any such Document or instrument or the taking of any such action by the Debtors or, from and after the Effective Date, the Liquidating Trustee, shall be, and hereby is, deemed conclusive evidence of the authority of such action.

f.  As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust) is hereby irrevocably appointed as the Debtors' attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of the Debtors and in the name of the Debtors to take any action and to execute any instrument that the Liquidating Trustee, in her sole discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Liquidating Trust Assets in the Liquidating Trust, including without limitation to issue, execute, deliver, file, and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Liquidating Trustee may deem necessary or desirable in furtherance thereof, each solely to the extent and as authorized in the Liquidating Trust Agreement.

g.  All amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, the partnership agreements, and/or bylaws of the Debtors and all other corporate action on behalf of the Debtors as may be necessary to put into effect or carry out the terms and intent of the Plan, including, without limitation, any mergers, consolidations, or dissolutions of the Debtors, may be effected, exercised, and taken without further action by the Debtors' directors, officers, managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers,  and/or members of the Debtors. The Liquidating Trustee, as authorized signatory of the Debtors, is authorized to execute any document, certificate or agreement necessary to effectuate any and all transactions contemplated under the Plan on behalf of such Debtors (including, without limitation, any mergers, consolidations or dissolutions of the Debtors), and file with the Secretary of State of the State of Texas any articles or certifications of merger or dissolution or such other documents as may be necessary in order to effect such actions, which documents, certificates and agreements shall be binding on the Debtors, all holders of Claims, and all holders of

Equity Interests and, upon execution by the Liquidating Trustee as authorized herein, shall have the same force and effect as if approved by all requisite partners, members, managers or Equity Interest holders of the Debtors.

5.     Approval of Liquidating Trust Agreement.  The Liquidating Trust Agreement as modified as announced in open court and substantially in the form filed by the Debtors at Docket No. 478 (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "Liquidating Trust Agreement") is APPROVED, and the Debtors, the Liquidating Trustee, and the Liquidating Trust are authorized to take all actions contemplated under the Liquidating Trust Agreement, including making appropriate modifications that do not materially affect substantive rights.

6.     General Settlement of Claims and Equity Interests.  As one element of, and in consideration for, an overall negotiated settlement of numerous disputed Claims and issues embodied in the Plan, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code § 1123 and in consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan shall, upon consummation of the Plan, constitute a good faith compromise and settlement of all controversies resolved pursuant to the Plan, Claims, and Equity Interests.  All distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

7.     Plan Classification Controlling. The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. To the extent the Ballots identified a particular Class to which a Holder was a member, the classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or to reject the Plan; and (b) shall not be binding on the Debtors except for voting purposes.

8.      <u>Preservation of Causes of Action</u>. The provisions of Section 7.7 of the Plan are hereby approved in their entirety. The Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person, except as otherwise expressly provided in the Plan or in this Order. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, expressly reserve all of their respective Causes of Action for later adjudication.

9.      <u>Liquidating Trust Assets</u>. The property of the Debtors' Estates will not revest in the Debtors on or after the Effective Date. Except as otherwise set forth in the Plan or this Confirmation Order, pursuant to section 1123(b)(3) of the Bankruptcy Code, all property of the Estates constituting the Liquidating Trust Assets shall be conveyed and transferred by the Debtors to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances, without the need for any Entity to take any further action or obtain any approval, but subject to the Liquidating Trust's obligations under the Plan and the Liquidating Trust Agreement.  Thereupon, the Debtors shall have no interest in the Liquidating Trust Assets or in the Liquidating Trust.  Upon the Effective Date, the Liquidating Trust shall be authorized as the representative of the Estates to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan.  From and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities under, or related to the ownership or operation of, the Liquidating Trust Assets.

10.     <u>Liquidating Trustee.</u>  Anna Phillips is hereby approved to serve as the Liquidating Trustee subject to the terms set forth in the Plan, including the Plan Supplement, and the

Liquidating Trust Agreement. Ms. Phillips and her successors (if any) are authorized in accordance with 11 U.S.C § 1123(b)(3) to take the actions contemplated in the Plan, the Liquidating Trust Agreement, and this Confirmation Order. The Liquidating Trustee shall be permitted to pay her fees and expenses and the fees and expenses of his professionals for services rendered in connection with this Bankruptcy Cases, the Liquidating Trustee's appointment under the Plan, the Liquidating Trust Agreement, and this Confirmation Order to the extent permitted by the Plan, the Plan Supplement, and the Liquidating Trust Agreement. Such payments shall be made by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

11.    <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §1123(b)(2)</u>. Except to the extent (a) the Debtors have previously assumed, and (if applicable) assigned, or rejected an executory contract or unexpired lease or (b) prior to the Effective Date, the Bankruptcy Court has entered an Order authorizing the assumption, and (if applicable) assignment, of an executory contract or unexpired lease, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date,  pursuant to Bankruptcy Code §§ 365 and 1123. Notwithstanding anything to the contrary, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to a lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Liquidating Trust, or any successors of the Debtors.

12.    <u>Authority</u>. All actions and transfers contemplated under the Plan, including but

not limited to, any certificates, agreements or other documents or instruments to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, free and clear of interests, Claims, Liens, and encumbrances shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members.

13.    <u>Legal Binding Effect</u>. The provisions of the Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

14.    <u>Exculpations and Injunction</u>.  The following exculpations and injunction, which are also set forth in the Plan, are approved and authorized in their entirety:

15.    <u>Exculpation.</u>  Neither the Plan Parties nor the Creditors' Committee, including its members, advisors, professionals, Independent Contractors, and agents (collectively, "<u>Exculpation Parties</u>") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of these Bankruptcy Cases, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

NOTHING CONTAINED IN THE PLAN SHALL OPERATE AS A RELEASE, WAIVER, OR DISCHARGE OF ANY CLAIM, CAUSE OF ACTION, RIGHT OR OTHER LIABILITY AGAINST THE MEMBERS OF THE CREDITORS' COMMITTEE IN ANY CAPACITY OTHER THAN AS A MEMBER OF THE CREDITORS' COMMITTEE.

16.    <u>Injunction.</u> PURSUANT TO §§ 105, 1123, 1129 AND 1141 OF THE BANKRUPTCY CODE, IN ORDER TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE

EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM, DEBT, OR LIABILITY THAT IS TREATED PURSUANT TO THE TERMS OF THE PLAN ARE AND SHALL BE PERMANENTLY ENJOINED AND FOREVER BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS, DEBTS, OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE COMMITTEE, THE PURCHASER, OR THE TRANSFERRED ASSETS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE ESTATE ASSETS, THE PURCHASER, OR THE TRANSFERRED ASSETS; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY OR IS INCONSISTENT

WITH THE PROVISIONS OF THE PLAN OR CONFIRMATION ORDER; OR (F) INTERFERING WITH THE RIGHTS AND REMEDIES OF THE DEBTORS, THE LIQUIDATING TRUST, OR THE LIQUIDATING TRUSTEE UNDER THE PLAN AND THE DOCUMENTS EXECUTED IN CONNECTION THEREWITH. THE DEBTORS, THE LIQUIDATING TRUST, AND THE PURCHASER SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS INJUNCTION PROVISION. THIS INJUNCTION PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.

17.     <u>Exemption from Certain Taxes</u>. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

18.     <u>Exemption from Securities Laws</u>. To the extent constituting securities under the 1933 Act, the Beneficial Interests offered, sold, issued and/or distributed pursuant to the Plan are deemed to have been offered, sold, issued and distributed pursuant to Bankruptcy Code § 1145.

Pursuant to Bankruptcy Code § 1145, the exemption of the offer and sale of securities from the registration requirements of the 1933 Act, and any state or local law requiring registration for the offer or sale of a security, applies with respect to Beneficial Interests distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act. Without limiting the generality of the foregoing the offer, sale, issuance, and distribution of the Beneficial Interests to Claimants pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer, broker, or dealer thereof pursuant to Bankruptcy Code § 1145(a).

19.     <u>Injunctions and Automatic Stay</u>.  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of or prior to the Confirmation Date (excluding any injunctions or stays contained in the Plan the Confirmation Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

20.     <u>Cancellation of Securities</u>. Unless otherwise provided for in the Plan, on the Effective Date, all promissory notes, stock, instruments, indentures, bonds, agreements, certificates or other documents evidencing, giving rise to, or governing any Equity Interest in, or debt obligation of, the Debtors shall be deemed cancelled and shall represent only the right, if any, to participate in the distributions contemplated by the Plan. Except as otherwise provided in the Plan, the obligations of the Debtors thereunder or in any away related thereto shall be fully released, terminated, extinguished and discharged and, with respect to the Equity Interests in the Debtors, retired and thereafter cease to exist, in each case without further notice to or order of the

Bankruptcy Court, act or action under applicable  law,  regulation,   order,  or rule  or any requirement  of  further  action,  vote  or  other  approval  or  authorization  by any Person.

## Miscellaneous Provisions

21.    <u>Effective Date.</u>  The Plan shall not become Effective until the conditions set forth in Article 9.1 of the Plan are satisfied or waived in writing by the Debtors.

22.    <u>Effective    Date    Payments.</u>    Within  60  days  after  the  Effective  Date,  each Professional whose retention with respect to the Debtors' Bankruptcy Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall file with the Bankruptcy Court, and serve on all parties required to receive notice, a final fee application.  Such claims shall be paid by the Liquidation Trustee upon Final Order as set forth in the Plan.

23.    <u>ERCOT Standing.</u>    Notwithstanding anything to the contrary in the Plan, the Liquidating Trust Agreement and Declaration of Trust or this Confirmation Order, ERCOT shall have standing to file and prosecute objections to any and all claims filed by Nippon Gas Co., Ltd., Nippon Gas USA, Inc. and Bandon River Capital, LLC in the Bankruptcy Cases.

24.    <u>Settlement of Matters over $500,000.</u>      The Liquidating  Trustee  shall file  a motion to Approve Compromise and Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 in order to settle any claim where the amount in dispute exceeds $500,000 and/or when the amount in controversy exceeds $500,000.

25.    <u>Retention of Liens by Harris County and Local Taxing Entities.</u>    Harris County's and the Local Taxing Entities liens shall continue to attach to the proceeds from the sale of the Debtors' assets located in Harris County to the same extent and with the same priority as the liens they held against the assets prior to the Petition Date, until such time as Harris County's and the Local Taxing Entities' claims, including accrued post-petition interest, are paid.  These

funds may be distributed only in payment of the claim and liens of Harris County and the Local Taxing Entities until such claims are paid.

26.     <u>Payment of Fees</u>.     The Debtors and the Liquidating Trustee as applicable, will comply with the U.S. Trustee's quarterly reporting requirements and shall pay any outstanding U.S. Trustee Fees, pursuant to section 1930(a) of the Judicial Code, in full on the Effective Date, and the Debtor, Liquidating Trust, and Liquidating Trustee shall continue to pay such fees based on disbursements/distributions until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.

27.     <u>Reservation of Rights</u>.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

28.     <u>Notice of Effective Date</u>. On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall file on the docket of the Bankruptcy Cases a notice of the entry of the Confirmation Order, the occurrence of the Effective Date, and such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

27.     <u>Waiver or Estoppel</u>.   Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated, by virtue of an agreement made with the Debtors or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with this Court prior to the Confirmation Date.

28.    <u>References to Plan Provisions</u>.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

29.    <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

30.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

31.    <u>Modification of the Plan Prior to Substantial Consummation</u>. After the Confirmation Date and prior to the Effective Date of the Plan, the Debtors may, under Bankruptcy Code § 1127(b), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or

adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

32. _Conflicts between Plan and Confirmation Order_. If there is any conflict between the Plan (as supplemented by the Plan Supplement) and this Confirmation Order, the terms of this Confirmation Order shall control.

33. _Severability of Plan Provisions_. Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

34. _Retention of Jurisdiction_. This Bankruptcy Court's retention of jurisdiction as set forth in Article 11 of the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

35. _Nonseverable and Mutually Dependent_. The provisions of this Confirmation Order are nonseverable and mutually dependent.

36. _Recordable Form_. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental entity for filing and recording purposes without further or additional orders, certifications or other supporting documents. Further, the Bankruptcy Court authorizes the Liquidating Trustee and the Liquidating Trust, as applicable, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

37. _Immediate Effectiveness._ Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002, or otherwise, immediately upon entry of this Confirmation Order, the terms of (a) this Confirmation Order and (b) subject to the occurrence of the Effective Date, the Plan and

the Plan Supplement, in each case shall be immediately effective and enforceable and deemed binding on the Debtors, the Liquidating Trust, any and all Holders, any trustees or examiners appointed in these Bankruptcy Cases, all persons and entities that are party to or subject to the settlements, compromises, discharges, injunctions, stays, and exculpations described in the Plan or herein, each person or entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

38.   <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of the Confirmation Order.

Signed:  December 29, 2021

_____
Marvin Isgur
United States Bankruptcy Judge

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | CASE NO.:  21-31070 |
| ENTRUST ENERGY, INC.[1] | CHAPTER 11 |
| Debtor(s). | Jointly Administered |

**AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE**
**BANKRUPTCY CODE OF ENTRUST ENERGY, INC. AND ITS DEBTOR AFFILIATES**

Dated November 10, 2021

BAKER & HOSTETLER LLP
*Attorneys to the Debtors*

Elizabeth A. Green, Esq.
Fed ID No. 903144
Email:  egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email:  jparrish@bakerlaw.com
Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone:  (407) 649-4000
Facsimile:  (407) 841-0168

Jorian L. Rose, Esq. (*admitted pro hac vice*)
Email:  jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Entrust Energy, Inc. (2194); Entrust Treasury Management Services, Inc. (2347); Entrust Energy East, Inc. (3446); Power of Texas Holdings, Inc. (8159); Knocked, Corp. (0195); Akyta Holdings, Inc. (7696); Enserve, Inc. (9111); Akyta, Inc. (7560); Energistics, Inc. (3460); SPH Investments, Inc, (0271); Akyta IP, Inc. (8798); Surge Direct Sales, Inc. (7225); Entrust Energy Operations, Inc. (7479); Strategic Power Holdings, LLC (7069); NGAE, Inc. (1888). The Debtors' mailing address is Entrust Energy, Inc., 1301 McKinney Street, Suite 2950, Houston, TX 77010.

## <u>TABLE OF CONTENTS</u>

ARTICLE I DEFINITIONS AND INTERPRETATION ..................................................................1
    1.1     Administrative Expense Claims Bar Date ...........................................1
    1.2     Administrative Expense Claim .........................................................1
    1.3     Ad Valorem Tax Claims ....................................................................1
    1.4     Allowed ..............................................................................................1
    1.5     Allowed Priority Non-Tax Claim ......................................................2
    1.6     Allowed Priority Tax Claim ..............................................................2
    1.7     Allowed Secured Claim .....................................................................2
    1.8     Allowed Unsecured Claim .................................................................2
    1.9     Available Trust Cash .........................................................................2
    1.10    Avoidance Actions .............................................................................2
    1.11    Ballot .................................................................................................2
    1.12    Bankruptcy Cases ..............................................................................2
    1.13    Bankruptcy Code ...............................................................................2
    1.14    Bankruptcy Court ...............................................................................2
    1.15    Bankruptcy Rules ..............................................................................3
    1.16    Bar Date ............................................................................................3
    1.17    Beneficial Interests ...........................................................................3
    1.18    Business Day .....................................................................................3
    1.19    Cash ...................................................................................................3
    1.20    Causes of Action ...............................................................................3
    1.21    Claim .................................................................................................3
    1.22    Claims Agent ....................................................................................3
    1.23    Claims Register .................................................................................3
    1.24    Class ..................................................................................................3
    1.25    Collateral ...........................................................................................3
    1.26    Confirmation Date .............................................................................3
    1.27    Confirmation Hearing ........................................................................4
    1.28    Confirmation Order ...........................................................................4
    1.29    Convenience Class Unsecured Claims ..............................................4
    1.30    Creditor .............................................................................................4
    1.31    Creditors' Committee ........................................................................4
    1.32    Debtor ...............................................................................................4
    1.33    Disallowed ........................................................................................4
    1.34    Disclosure Statement ........................................................................4
    1.35    Disputed ............................................................................................4
    1.36    Disputed Claims Reserves ................................................................4
    1.37    Disputed General Unsecured Claims Reserve ..................................4
    1.38    Disputed Priority Claims Reserve ....................................................5
    1.39    Distribution .......................................................................................5
    1.40    Distribution Date ...............................................................................5
    1.41    Distribution Record Date ..................................................................5
    1.42    Effective Date ...................................................................................5
    1.43    Equity Interest ..................................................................................5
    1.44    ERCOT .............................................................................................5

1.45    ERCOT Claims ........................................................................5
1.46    Estate ........................................................................................5
1.47    Estate Assets ............................................................................5
1.48    Estimation Order .......................................................................6
1.49    Exculpation Parties ...................................................................6
1.50    Final Distribution ......................................................................6
1.51    Final Order ...............................................................................6
1.52    Holder .......................................................................................6
1.53    Initial Distribution Date ............................................................6
1.54    Insider .......................................................................................6
1.55    Insurance Policies .....................................................................6
1.56    Intercompany Claim ..................................................................6
1.57    Lien ...........................................................................................6
1.58    Liquidating Trust ......................................................................7
1.59    Liquidating Trust Assets ...........................................................7
1.60    Liquidating Trust Agreement ....................................................7
1.61    Liquidating Trustee ...................................................................7
1.62    Nippon ......................................................................................7
1.63    Ordinary Course Professionals ..................................................7
1.64    Oversight Committee .................................................................7
1.65    Party in Interest ........................................................................7
1.66    Person .......................................................................................7
1.67    Petition Date .............................................................................7
1.68    Plan ...........................................................................................7
1.69    Plan Documents ........................................................................7
1.70    Plan Supplement .......................................................................7
1.71    Priority Non-Tax Claim ............................................................8
1.72    Priority Tax Claim ....................................................................8
1.73    Pro Rata Share ..........................................................................8
1.74    Professionals ............................................................................8
1.75    Professional Fee Claims ............................................................8
1.76    Professional Fee Escrow Account .............................................8
1.77    Retained Cash ...........................................................................8
1.78    Schedules ..................................................................................8
1.79    Secured Claim ...........................................................................8
1.80    Shell Energy .............................................................................8
1.81    Shell Litigation .........................................................................8
1.82    Shell Trading ............................................................................9
1.83    Subordinated Beneficial Interests .............................................9
1.84    Tax Code ...................................................................................9
1.85    United States Trustee ................................................................9
1.86    Unsecured Claim .......................................................................9

ARTICLE II ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS.........9
2.1    Filing Administrative Expense Claims. ......................................9
2.2    Administrative Expense Claim Treatment ..................................9
2.3    Professional Fee Claims. ...........................................................10

| | | |
|---|---|---|
| 2.4 | Fees Under 28 U.S.C. §1930 | 10 |
| 2.5 | Priority Tax Claims | 10 |

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................11

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS ..................................15

| | | |
|---|---|---|
| 4.1 | Class 1 – Priority Non-Tax Claims Against Entrust Energy, Inc. | 15 |
| 4.2 | Class 2 – Ad Valorem Tax Claims Against Entrust Energy, Inc. | 15 |
| 4.3 | Class 3 – Secured Claim Asserted by Shell Energy North America (US), LP Against Entrust Energy, Inc. | 15 |
| 4.4 | Class 4 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy, Inc. | 16 |
| 4.5 | Class 5 – Convenience Class Unsecured Claims Asserted Against Entrust Energy, Inc. | 16 |
| 4.6 | Class 6 – General Unsecured Claims Asserted Against Entrust Energy, Inc. | 16 |
| 4.7 | Class 7 – Equity Interests in Entrust Energy, Inc. | 16 |
| 4.8 | Class 8 – Secured Claim Asserted by Shell Energy North America (US), LP Against Entrust Treasury Management Services, Inc. | 17 |
| 4.9 | Class 9 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Treasury Management Services, Inc. | 17 |
| 4.10 | Class 10 - General Unsecured Claims Against Entrust Treasury Management Services, Inc. | 17 |
| 4.11 | Class 11- Equity Interests in Entrust Treasury Management Services, Inc. | 18 |
| 4.12 | Class 12 - Secured Claim Asserted by Shell Energy North America (US), LP Against Entrust Energy East, Inc. | 18 |
| 4.13 | Class 13 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy East, Inc. | 18 |
| 4.14 | Class 14 - Convenience Class Unsecured Claims Against Entrust Energy East, Inc. | 19 |
| 4.15 | Class 15 – General Unsecured Claims Against Entrust Energy East, Inc. | 19 |
| 4.16 | Class 16– Equity Interests in Entrust Energy East, Inc. | 19 |
| 4.17 | Class 17 – Secured Claim Asserted by Shell Energy North America (US), LP Against Power of Texas Holdings, Inc. | 20 |
| 4.18 | Class 18 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Power of Texas Holdings, Inc. | 20 |
| 4.19 | Class 19 – Convenience Class Unsecured Claims Against Power of Texas Holdings, Inc. | 20 |
| 4.20 | Class 20- General Unsecured Claims Against Power of Texas Holdings, Inc. | 21 |
| 4.21 | Class 21 - Equity Interests in Power of Texas Holdings, Inc. | 21 |
| 4.22 | Class 22 - Secured Claim Asserted by Shell Energy North America (US), LP Against Akyta Holdings, Inc. | 21 |
| 4.23 | Class 23 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta Holdings, Inc. | 21 |
| 4.24 | Class 24 - General Unsecured Claims Against Akyta Holdings, Inc. | 22 |
| 4.25 | Class 25 - Equity Interests in Akyta Holdings, Inc. | 22 |

4.26     Class 26 - Priority Non-Tax Claims Against Enserve, Inc. ...................................22

4.27     Class 27 - Secured Claim of JP Morgan Chase Bank (NA) Against Enserve, Inc. ...........................................................................................................23

4.28     Class 28 - Secured Claim Asserted by Shell Energy North America (US), LP Against Enserve, Inc. ..................................................................................23

4.29     Class 29 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Enserve, Inc. ..............................................................................23

4.30     Class 30 - Convenience Class Unsecured Claims Against Enserve, Inc. ..............24

4.31     Class 31 - General Unsecured Claims Against Enserve, Inc. ...............................24

4.32     Class 32 - Equity Interests in Enserve, Inc. ......................................................24

4.33     Class 33 - Secured Claim Asserted by Shell Energy North America (US), LP Against Akyta, Inc. .....................................................................................24

4.34     Class 34 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta, Inc. ...................................................................................25

4.35     Class 35 - Convenience Class Unsecured Claims Against Akyta, Inc. ................25

4.36     Class 36 - General Unsecured Claims Against Akyta, Inc. ..................................25

4.37     Class 37 - Equity Interests in Akyta, Inc. ..........................................................26

4.38     Class 38 - Secured Claim Asserted by Shell Energy North America (US), LP Against Energistics, Inc. .............................................................................26

4.39     Class 39 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Energistics, Inc. ...........................................................................26

4.40     Class 40 - General Unsecured Claims Against Energistics, Inc. ..........................27

4.41     Class 41 - Equity Interests in Energistics, Inc. ..................................................27

4.42     Class 42 - Secured Claim Asserted by Shell Energy North America (US), LP Against SPH Investments, Inc. ...................................................................27

4.43     Class 43 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against SPH Investments, Inc. .................................................................28

4.44     Class 44 - General Unsecured Claims Against SPH Investments, Inc. ................28

4.45     Class 45 - Equity Interests in SPH Investments, Inc. .........................................28

4.46     Class 46 - Secured Claim Asserted by Shell Energy North America (US), LP Against Akyta IP, Inc. ................................................................................28

4.47     Class 47 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta IP, Inc. ..............................................................................29

4.48     Class 48- General Unsecured Claims Against Akyta IP, Inc. ...............................29

4.49     Class 49 – Equity Interests in Akyta IP, Inc. ....................................................29

4.50     Class 50 – General Unsecured Claims Against Strategic Power Holdings, LLC ...............................................................................................................30

4.51     Class 51 – Equity Interest in Strategic Power Holdings, LLC .............................30

4.52     Class 52 - General Unsecured Claims Against NGAE, Inc. .................................30

4.53     Class 53 - Equity Interests in NGAE, Inc. .........................................................30

4.54     Class 54 – Secured Claim Asserted by Shell Energy North America (US), L.P. Against Surge Direct Sales, Inc. ................................................................31

4.55     Class 55 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Surge Direct Sales, Inc. ..............................................................31

4.56     Class 56 – General Unsecured Claims Against Surge Direct Sales, Inc. ..............31

4.57     Class 57 – Equity Interests in Surge Direct Sales, Inc. ......................................32

4.58    Class 58 – Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy Operations, Inc. .......................................32
4.59    Class 59 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy Operations, Inc. ..........................................32
4.60    Class 60 – General Unsecured Claims Against Entrust Energy Operations, Inc. .........................................................................................................33
4.61    Class 61 – Equity Interests in Entrust Energy Operations, Inc. ..................33
4.62    Class 62 - Convenience Class Unsecured Claims Against Knocked Corporation .................................................................................................33
4.63    Class 63 - General Unsecured Claims Against Knocked Corporation. .................33
4.64    Class 64 - Equity Interests in Knocked Corporation. ...............................34

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS ...........................................34
5.1    Class Acceptance Requirement ...................................................................34
5.2    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown". ...............................................................................................34
5.3    Elimination of Vacant Classes. ..................................................................34
5.4    Voting Classes; Deemed Acceptance by Non-Voting Classes. .............................35

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .................................................35
6.1    General Settlement of Claims and Equity Interests ...................................35
6.2    Distribution Record Date ............................................................................35
6.3    Transfer of Claim .......................................................................................35
6.4    Allocation of Professional Fees. ................................................................35
6.5    Method of Distributions Under the Plan .....................................................35
6.6    Withholding and Reporting Requirements ..................................................36
6.7    Minimum Distributions ..............................................................................37
6.8    No Payments of Fractional Dollars ............................................................37
6.9    Setoff and Recoupment ..............................................................................37

ARTICLE VII MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN ........37
7.1    General Overview of the Plan .....................................................................37
7.2    No Substantive Consolidation ....................................................................37
7.3    Transfers of Property to the Liquidating Trust ...........................................38
7.4    Dissolution of the Debtors .........................................................................38
7.5    Professional Fee Escrow Account. .............................................................38
7.6    The Liquidating Trust. ................................................................................38
7.7    Preservation of Causes of Action. ..............................................................40
7.8    Effectuating Documents and Further Transactions .....................................41
7.9    Reliance on Documents. .............................................................................41
7.10    Corporate Action ........................................................................................42
7.11    Liquidating and Dissolution of Debtors .....................................................42
7.12    Closing of the Bankruptcy Cases ...............................................................42
7.13    Preservation and Abandonment of Records .................................................42
7.14    General Disposition of Assets .....................................................................42
7.15    Execution of Documents to Effectuate Plan ...............................................42

7.16    Disallowance of Claims Without Further Order of the Court...............................42
7.17    Cancellation of Existing Securities and Agreements...............................................43
7.18    Cancellation of Existing Security Interests.............................................................43
7.19    Return of Deposits ...................................................................................................43
7.20    Approval of Plan Documents...................................................................................43
7.21    Wind Down of the Estates and Distribution of Proceeds. .....................................43

ARTICLE VIII PROCEDURES FOR DISPUTED CLAIMS ................................................43
8.1     Objections to Claims................................................................................................43
8.2     [Intentionally Omitted]. .......................................**Error! Bookmark not defined.**
8.3     No Distribution Pending Allowance ........................................................................44
8.4     Estimation ................................................................................................................44
8.5     Disallowance of Certain Claims and Equity Interests. ...........................................45
8.6     Controversy Concerning Impairment. .....................................................................45
8.7     Disputed Claims.......................................................................................................45
8.8     Plan Distributions to Holders of Subsequently Allowed Claims.............................46
8.9     Insurance Preservation and Proceeds......................................................................46
8.10    Allocation of Plan Distributions Between Principal and Interest ...........................46
8.11    No Recourse..............................................................................................................47
8.12    Satisfaction of Claims and Equity Interests ...........................................................47

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................47
9.1     Executory Contracts and Unexpired Leases. ..........................................................47
9.2     Approval of Assumption and Rejection of Executory Contracts and
        Unexpired Leases.....................................................................................................47
9.3     Rejection Claims ......................................................................................................48

ARTICLE X EFFECTIVENESS OF THE PLAN.....................................................................48
10.1    Conditions to Confirmation ....................................................................................48
10.2    Conditions Precedent to Effective Date...................................................................48
10.3    Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic
        Stay ..........................................................................................................................48
10.4    Notice of the Effective Date. ...................................................................................49
10.5    Satisfaction of Conditions........................................................................................49

ARTICLE XI EXCULPATION, INJUNCTION, AND EFFECT OF CONFIRMATION...........49
11.1    Binding Effect...........................................................................................................49
11.2    Release of Claims Against and Equity Interests in the Debtors ..............................49
11.3    Term of Injunctions or Stays....................................................................................49
11.4    Injunction Against Interference with Plan. .............................................................50
11.5    Injunction .................................................................................................................50
11.6    Exculpation and Limitation of Liability ..................................................................50
11.7    Injunction Related to Releases and Exculpation......................................................51
11.8    Termination of Subordination Rights and Settlement of Related Claims..............51
11.9    Release of Liens. ......................................................................................................51

ARTICLE XII RETENTION OF JURISDICTION ..................................................................51
    12.1    Jurisdiction of Bankruptcy Court..........................................................................51

ARTICLE XIII CRAMDOWN RESERVATION....................................................................53
    13.1    Nonconsensual Confirmation................................................................................53

ARTICLE XIV MISCELLANEOUS PROVISIONS..............................................................53
    14.1    Dissolution of Creditors' Committee.....................................................................53
    14.2    Substantial Consummation. ...................................................................................53
    14.3    Exemption from Transfer Taxes. ...........................................................................53
    14.4    No Discharge of Claims.........................................................................................54
    14.5    Modification of Plan. .............................................................................................54
    14.6    Revocation or Withdrawal of Plan.........................................................................54
    14.7    Courts of Competent Jurisdiction. .........................................................................54
    14.8    Governing Law. .....................................................................................................54
    14.9    Exhibits. .................................................................................................................54
    14.10  Successors and Assigns..........................................................................................54
    14.11  Time. ......................................................................................................................54
    14.12  Notices. ..................................................................................................................54
    14.13  Entire Agreement. .................................................................................................55

## INTRODUCTION

The above-captioned debtors propose the following joint chapter 11 plan of liquidation. Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bankruptcy Code. Holders of Claims and Equity Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, and assets, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND IN THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS CONSUMMATION.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

For purposes of the Plan, the following terms will have the meanings set forth below. A term used but not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

1.1     **Administrative Expense Claims Bar Date**Error! Bookmark not defined. has the meaning set forth in Section 2.2 of this Plan.

1.2     **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of any of the Bankruptcy Cases allowed under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estates; any actual and necessary costs and expenses of operating the Debtors' businesses; any indebtedness or obligations incurred or assumed by the Debtors, as debtors-in-possession, during the Bankruptcy Cases; *provided*, *however* that any fees under 28 U.S.C. § 1930 are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 2.4 hereof.

1.3     **Ad Valorem Tax Claims** means all Allowed Claims against any of the Debtors based on ad valorem taxes levied on property owned by the Debtors, which shall include, but not be limited to, the following proofs of claims to the extent such claims are Allowed: Harris County, et al., Spring Independent School District, and Grand Lakes Municipal Utility District No. 4.

1.4     **Allowed** means, with reference to any Claim (or portion thereof), (i) any Claim against the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as

1

liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim proof of which has been timely filed and (A) no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate, or otherwise limit recovery with respect thereto, has been filed, (B) no objection has been interposed in accordance with this Plan, or (C) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (iii) any Claim expressly allowed by a Final Order or the Plan, or (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee and the Liquidating Trust Agreement.  Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

**1.5** **Allowed Priority Non-Tax Claim** means a Priority Non-Tax Claim to the extent such Priority Non-Tax Claim is or becomes an Allowed Claim.

**1.6** **Allowed Priority Tax Claim** means a Priority Tax Claim to the extent such Priority Tax Claim is or becomes an Allowed Claim.

**1.7** **Allowed Secured Claim** means a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**1.8** **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**1.9** **Available Trust Cash** means proceeds of the Liquidating Trust's assets that are available for distribution to holders of Beneficial Interests in the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

**1.10** **Avoidance Actions** means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

**1.11** **Ballot** means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

**1.12** **Bankruptcy Cases** means the jointly administered chapter 11 cases of the Debtors.

**1.13** **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to these Bankruptcy Cases.

**1.14** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the Bankruptcy Cases.

**1.15    Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as amended from time to time, applicable to these Bankruptcy Cases, and any Local Rules of the Bankruptcy Court.

**1.16    Bar Date** means the applicable deadline for filing proofs of Claim, including, without limitation, Claims arising prior to the Petition Date (including 503(b)(9) Claims) and Administrative Expense Claims, as established by an order of the Bankruptcy Court or under this Plan.

**1.17    Beneficial Interests** means the uncertificated beneficial interests in the Liquidating Trust evidencing the right of each holder of Allowed Unsecured Claims against any of the Debtors to receive distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

**1.18    Business Day** means any day other than (a) a Saturday, (b) a Sunday, or (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.19    Cash** means legal tender of the United States of America.

**1.20    Causes of Action** means any and all actions, causes of action, derivative litigation claims, claims against directors and officers, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, including, but not limited to, all causes of actions identified on **Exhibit C** to the Disclosure Statement as may be amended prior to the entry of the Confirmation Order, and further including all Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Debtors' respective Petition Dates or during the course of these Bankruptcy Cases.

**1.21    Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.22    Claims Agent** means BMC Group, Inc. or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. § 156(c).

**1.23    Claims Register** means the database of proofs of claim maintained by the Clerk of the Bankruptcy Court.

**1.24    Class** means each category of Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.25    Collateral** means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code or otherwise invalid.

**1.26    Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.27** **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.28** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Debtors and the Creditors' Committee.

**1.29** **Convenience Class Unsecured Claims** means an Unsecured Claim where: (a) each such Holder's Unsecured Claim that is subject to treatment under the Plan are in an allowed aggregate amount of $10,000 or less; or (b) such Holder has elected on its Ballot to opt in to the Convenience Class.

**1.30** **Creditor** has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.31** **Creditors' Committee** means the statutory committee of unsecured creditors appointed in the Bankruptcy Cases by the Office of the United States Trustee pursuant to section 1102 of the Bankruptcy Code.

**1.32** **Debtor** means each of the Debtors in the Bankruptcy Cases on and after their respective Petition Dates, and "**Debtors**" means all of them collectively.

**1.33** **Disallowed** means a finding of the Bankruptcy Court in a Final Order that a Disputed Claim shall not be an Allowed Claim.

**1.34** **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.35** **Disputed** means, with respect to any Claim or Equity Interest (or portion thereof), (i) that is not an Allowed Claim, Allowed Equity Interest, Disallowed Claim, or Disallowed Equity Interest or (ii) any Claim or Equity Interest (or portion thereof) to which the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, or dispute has not been settled, waived, withdrawn, or determined by a Final Order.  A Claim that is Disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing, if any, and Disputed as to the excess.

**1.36** **Disputed Claims Reserves** means, collectively, the Disputed General Unsecured Claims Reserve and the Disputed Priority Claims Reserve.

**1.37** **Disputed General Unsecured Claims Reserve** means a reserve established by the Liquidating Trustee from Cash on hand for the benefit of each holder of a Disputed General Unsecured Claim, Cash in an amount equal to the Pro Rata Distribution to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim.

**1.38**    **Disputed Priority Claims Reserve** means a reserve established by the Liquidating Trustee from Cash on hand for the benefit of each holder of a Disputed Administrative Expense Claim, Disputed Priority Tax Claim, and Disputed Priority Non-Tax Claim, Cash in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Liquidating Trustee; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending on the Effective Date, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable.

**1.39**    **Distribution** means a distribution of Cash or other property pursuant to this Plan.

**1.40**    **Distribution Date** means any date that is: (a) the Effective Date; (b) the Initial Distribution Date; (c) any Interim Distribution Date; or (d) the Final Distribution Date, as the context requires.

**1.41**    **Distribution Record Date** means the Confirmation Date or such other later date as shall be established by the Bankruptcy Court in the Confirmation Order.

**1.42**    **Effective Date** means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 10.2 hereof have been satisfied or waived.

**1.43**    **Equity Interest** means any ownership interests in any of the Debtors, which includes, but is not limited to, issued or authorized common or preferred stock, warrants for the issuance of such shares, other stock, stock equivalents, limited partnership interests, membership interests, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.44**    **ERCOT** means the Electric Reliability Council of Texas Inc.

**1.45**    **ERCOT Claims** means all Claims against any of the Debtors that accrued in favor of ERCOT, whether or not such claims were thereafter assigned or transferred to any other person.

**1.46**    **Estate** means the bankruptcy estate of any of the Debtors in the Bankruptcy Cases, and "**Estates**" means, collectively, the bankruptcy estates of all of the Debtors in the Bankruptcy Cases, as created under section 541 of the Bankruptcy Code.

**1.47**    **Estate Assets** means all of the assets, property, and cash of each of the Debtors, as defined in section 541 of the Bankruptcy Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date and not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, (a) the Avoidance Actions (other than causes of action arising under section 549 of the Bankruptcy Code related to Collateral and any related action under section 550 of the Bankruptcy Code); (b) the Debtors' commercial tort claims; (c) the Debtors' claims or Causes of Action against the Debtors' directors and officers; (d) claims or Causes of Action that

may be satisfied by Insurance Policies, each only to the extent such Claims or Causes of Action do not constitute Collateral; (e) any assets of the Debtors not otherwise distributed or administered under the Plan; and (f) any proceeds or product of the foregoing.

**1.48    Estimation Order** means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim. The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.49    Exculpation Parties** shall have the meaning ascribed to it in Section 11.6 of the Plan.

**1.50    Final Distribution** means the distribution to be made by the Liquidating Trustee after the Debtors' assets have been reduced to Cash, abandoned or otherwise disposed of, and the Debtors have resolved all Disputed Claims and paid all Professional Fee Claims approved by the Bankruptcy Court by Final Order.

**1.51    Final Order** means an order or judgment, as entered on the docket of the applicable court, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided*, *however*, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order; *provided*, *further*, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

**1.52    Holder** means the legal or beneficial owner of a Claim or Equity Interest, and when used in conjunction with a class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type.

**1.53    Initial Distribution Date** means, except as set forth in this Plan, the first Business Day twenty (20) days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Liquidating Trustee with the consent of the Oversight Committee, to make initial Distributions under this Plan.

**1.54    Insider** has the meaning set forth in section 101(31) of the Bankruptcy Code.

**1.55    Insurance Policies** means all insurance policies of the Debtors.

**1.56    Intercompany Claim** means a Claim, Cause of Action, or remedy held or asserted by or against any Debtor by another Debtor or Non-Debtor Affiliate of any Debtor.

**1.57    Lien** means a judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section

101(51) of the Bankruptcy Code; and a statutory lien as defined in section 101(53) of the Bankruptcy Code.

 **1.58** **Liquidating Trust** means the trust that will come into existence upon the Effective Date, and into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

 **1.59** **Liquidating Trust Assets** means all Estate Assets including the Causes of Action.

 **1.60** **Liquidating Trust Agreement** means the agreement governing the Liquidating Trust, dated as on or before the Effective Date, substantially in the form included in the Plan Supplement, which shall be in form and substance reasonably acceptable to the Debtors and the Creditors' Committee.

 **1.61** **Liquidating Trustee** means the trustee of the Liquidating Trust.

 **1.62** **Nippon** means, collectively, Nippon Gas USA, Inc. and Nippon Gas Co., Ltd.

 **1.63** **Ordinary Course Professionals** means those professionals authorized by the Court to be retained by the Debtors in accordance with the Order Granting Debtors' Motion for Entry of an Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief [Docket No. 218].

 **1.64** **Oversight Committee** has the meaning set forth in Section 7.6(b)(v) of this Plan.

 **1.65** **Party in Interest** means any entity or person with a legal or beneficial interest at issue in the Bankruptcy Cases.

 **1.66** **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

 **1.67** **Petition Date** means March 30, 2021, which is the date on which the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

 **1.68** **Plan** means this chapter 11 plan of liquidation, including exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

 **1.69** **Plan Documents** means those documents contained in the Plan Supplement necessary to effectuate this Plan following entry of the Confirmation Order, including the Liquidating Trust Agreement, which shall be subject to revision and modification prior to the Effective Date.

 **1.70** **Plan Supplement** means a separate volume of documents to be filed with the Bankruptcy Court not less than fourteen (14) days prior to the Confirmation Hearing, which shall include, but may not be limited to, the Liquidating Trust Agreement, which shall be subject to revision and modification prior to the Effective Date, and the designation of the Liquidating Trustee.

1.71    **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.72    **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.73    **Pro Rata Share** means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims (including Disputed Claims but, excluding Disallowed Claims) in that particular Class.

1.74    **Professionals** means all Persons retained by order of the Bankruptcy Court in connection with the Bankruptcy Cases, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code, excluding the Ordinary Course Professionals retained pursuant to order of the Bankruptcy Court.

1.75    **Professional Fee Claims** means a Claim by a Professional for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Bankruptcy Cases, including, without limitation, in connection with the final fee applications of such Professional.

1.76    **Professional Fee Escrow Account** means the segregated account established on the Effective Date, or as soon thereafter as is practicable, by the Liquidating Trustee, which shall be funded and used to pay Professional Fee Claims not yet satisfied as of the Effective Date.

1.77    **Retained Cash** means each Debtors' respective cash on hand as of the Effective Date.

1.78    **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.79    **Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.80    **Shell Energy** means Shell Energy North Amercia (US), LP.

1.81    **Shell Litigation** means any claims asserted by the Debtors against Shell Energy or Shell Trading, including, without limitation, claims asserted in *Entrust Energy, Inc., Entrust Energy East, Inc., and Power of Texas Holdings, Inc. v. Shell Energy North America (US), L.P. and Shell Trading Risk Management, LLC*, Case No. 21-03930, Bankr. S.D. Tx. together with any subsequently commenced litigation by the Debtors or the Liquidating Trustee against Shell Energy or Shall Trading.

8

**1.82**   **Shell Trading** means Shell Trading Risk Management, LLC.

**1.83**   **Subordinated Beneficial Interests** means the junior class of beneficial interests in the Liquidating Trust that shall not receive payment unless and until all of the Holders of Beneficial Interests are paid in full, and upon such occurrence, that shall receive all remaining Liquidating Trust Assets as provided in the Plan.

**1.84**   **Tax Code** means title 26 of the United States Code, as amended from time to time.

**1.85**   **United States Trustee** means the Office of the United States Trustee for Region 7.

**1.86**   **Unsecured Claim** means any Claim against the Debtors that is (i) not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim, or (ii) otherwise determined by the Bankruptcy Court to be an Unsecured Claim.

### ARTICLE II
### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**2.1**   **Filing Administrative Expense Claims**.   Any Person that asserts an Administrative Expense Claim, or a protective application on account of any Administrative Expense Claim, arising before the Effective Date, including Claims under section 503(b) of the Bankruptcy Code, but excluding (a) fees payable by the Debtors pursuant to 28 U.S.C. §1930 or any interest accruing thereto; (b) Professional Fee Claims; (c) claims that are entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code; (d) an Administrative Expense Claim that has been Allowed on or before the Effective Date; (e) an Administrative Expense Claim held by an officer, manager, member, or employee of the Debtors employed as of the Petition Date for indemnification, contribution, or advancement of expenses pursuant to: (i) the Debtors' operating agreements or similar organizational documents or (ii) any indemnification or contribution agreement approved by the Bankruptcy Court; or (f) an Intercompany Claim must file with the Bankruptcy Court and serve on the Claims Agent and the United States Trustee, notice of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the date that is thirty (30) days after service of notice of occurrence of the Effective Date (the "Administrative Expense Claims Bar Date"). Such notice must include at a minimum: (i) the name of the appropriate Debtor(s); (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED.

**2.2**   **Administrative Expense Claim Treatment**.   Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a different treatment, in writing, each Holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Expense Claim, Cash in an amount equal to such Allowed Administrative Expense Claim, either: (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Expense Claim becomes an Allowed

Administrative Expense Claim (the "Administrative Expense Claims Bar Date"). Any amounts that are not paid to a claimant on account of an Allowed 503(b)(9) Administrative Claims prior to the Effective Date for any reason shall retain their Chapter 11 administrative expense priority for payment under any further distribution of funds by the Liquidating Trust on account of the Debtor the claim is asserted against, including but not limited to post-effective date distributions, under the Liquidating Trust; *provided*, *however*, holders of Allowed 503(b)(9) Administrative Claims shall only be paid to the extent the Liquidating Trust has sufficient funds to pay amounts to its Creditors.

      **2.3**    **Professional Fee Claims**. All Professionals seeking allowance by the Bankruptcy Court of a Professional Fee Claim shall: (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; and (ii) if granted an award by the Bankruptcy Court, be paid in full in Cash such amount as awarded by the Bankruptcy Court (A) no later than five (5) Business Days after the date an order is entered with respect to such award or (B) upon such other terms as may be mutually agreed upon between such holder of a Professional Fee Claim and the Debtors. On the Effective Date, to the extent known, the Liquidating Trustee shall reserve and hold in the Professional Fee Escrow Account Cash in an amount equal to accrued but unpaid Professional Fee Claims as of the Effective Date, which Cash shall be used, until all Allowed Professional Fee Claims have been paid in full, solely for the payment of Allowed Professional Fee Claims. To the extent the Cash in the Professional Fee Escrow Account exceeds the amount of the Allowed Professional Fee Claims, such excess Cash shall be used by the Liquidating Trustee in accordance with the terms of this Plan.

      **2.4**    **Fees Under 28 U.S.C. §1930**. All fees payable in the Bankruptcy Cases under 28 U.S.C. § 1930, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Liquidating Trustee as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing the Bankruptcy Cases.

      **2.5**    **Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Liquidating Trustee, either: (i) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); *provided*, *however*, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

10

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are: (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 2 | Ad Valorem Tax Claims Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 3 | Secured Claim Asserted by Shell Energy North America, L.P. Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 4 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy, Inc. | Unimpaired | No (deemed to accept) |
| Class 5 | Convenience Class Unsecured Claims Against Entrust Energy, Inc. | Impaired | Yes |
| Class 6 | General Unsecured Claims Against Entrust Energy, Inc. | Impaired | Yes |
| Class 7 | Equity Interests in Entrust Energy, Inc. | Impaired | Yes |
| Class 8 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Treasury Management Services, Inc. | Unimpaired | No (deemed to accept) |
| Class 9 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Treasury Management Services, Inc. | Unimpaired | No (deemed to accept) |
| Class 10 | General Unsecured Claims Against Entrust Treasury Management Services, Inc. | Impaired | Yes |
| Class 11 | Equity Interests in Entrust Treasury Management Services, Inc. | Impaired | Yes |
| Class 12 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy East, Inc. | Unimpaired | No (deemed to accept) |
| Class 13 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy East, Inc. | Unimpaired | No (deemed to accept) |
| Class 14 | Convenience Class Unsecured Claims Against Entrust Energy East, Inc. | Impaired | Yes |
| Class 15 | General Unsecured Claims Against Entrust Energy East, Inc. | Impaired | Yes |

| Class 16 | Equity Interests in Entrust Energy East, Inc. | Impaired | Yes |
|---|---|---|---|
| Class 17 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Power of Texas Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 18 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Power of Texas Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 19 | Convenience Class Unsecured Claims Against Power of Texas Holdings, Inc. | Impaired | Yes |
| Class 20 | General Unsecured Claims Against Power of Texas Holdings, Inc. | Impaired | Yes |
| Class 21 | Equity Interests in Power of Texas Holdings, Inc. | Impaired | Yes |
| Class 22 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Akyta Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 23 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta Holdings, Inc. | Unimpaired | No (deemed to accept) |
| Class 24 | General Unsecured Claims Against Akyta Holdings, Inc. | Impaired | Yes |
| Class 25 | Equity Interests in Akyta Holdings, Inc. | Impaired | Yes |
| Class 26 | Priority Non-Tax Claims Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 27 | Secured Claim of JP Morgan Chase Bank (NA) Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 28 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 29 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Enserve, Inc. | Unimpaired | No (deemed to accept) |
| Class 30 | Convenience Class Unsecured Claims Against Enserve, Inc. | Impaired | Yes |
| Class 31 | General Unsecured Claims Against Enserve, Inc. | Impaired | Yes |
| Class 32 | Equity Interests in Enserve, Inc. | Impaired | Yes |
| Class 33 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Akyta, Inc. | Unimpaired | No (deemed to accept) |
| Class 34 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta, Inc. | Unimpaired | No (deemed to accept) |
| Class 35 | Convenience Class Unsecured Claims Against Akyta, Inc. | Impaired | Yes |

| Class 36 | General Unsecured Claims Against Akyta, Inc. | Impaired | Yes |
|---|---|---|---|
| Class 37 | Equity Interests in Akyta, Inc. | Impaired | Yes |
| Class 38 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Energistics, Inc. | Unimpaired | No (deemed to accept) |
| Class 39 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Energistics, Inc. | Unimpaired | No (deemed to accept) |
| Class 40 | General Unsecured Claims Against Energistics, Inc. | Impaired | Yes |
| Class 41 | Equity Interests in Energistics, Inc. | Impaired | Yes |
| Class 42 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against SPH Investments, Inc. | Unimpaired | No (deemed to accept) |
| Class 43 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against SPH Investments, Inc. | Unimpaired | No (deemed to accept) |
| Class 44 | General Unsecured Claims Against SPH Investments, Inc. | Impaired | Yes |
| Class 45 | Equity Interests in SPH Investments, Inc. | Impaired | Yes |
| Class 46 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Akyta IP, Inc. | Unimpaired | No (deemed to accept) |
| Class 47 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta IP, Inc. | Unimpaired | No (deemed to accept) |
| Class 48 | General Unsecured Claims Against Akyta IP, Inc. | Impaired | Yes |
| Class 49 | Equity Interests in Akyta IP, Inc. | Impaired | Yes |
| Class 50 | General Unsecured Claims Against Strategic Power Holdings, LLC | Impaired | Yes |
| Class 51 | Equity Interests in Strategic Power Holdings, LLC | Impaired | Yes |
| Class 52 | General Unsecured Claims Against NGAE, Inc. | Impaired | Yes |
| Class 53 | Equity Interests in NGAE, Inc. | Impaired | Yes |
| Class 54 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Surge Direct Sales, Inc. | Unimpaired | No (deemed to accept) |
| Class 55 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Surge Direct Sales, Inc. | Unimpaired | No (deemed to accept) |
| Class 56 | General Unsecured Claims Against Surge Direct Sales, Inc. | Impaired | Yes |

13

| Class 57 | Equity Interests in Surge Direct Sales, Inc. | Impaired | Yes |
|---|---|---|---|
| Class 58 | Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy Operations, Inc. | Unimpaired | No (deemed to accept) |
| Class 59 | Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy Operations, Inc. | Unimpaired | No (deemed to accept) |
| Class 60 | General Unsecured Claims Against Entrust Energy Operations, Inc. | Impaired | Yes |
| Class 61 | Equity Interests in Entrust Energy Operations, Inc. | Impaired | Yes |
| Class 62 | Convenience Class Unsecured Claims Against Knocked Corporation. | Impaired | Yes |
| Class 63 | General Unsecured Claims Against Knocked Corporation. | Impaired | Yes |
| Class 64 | Equity Interests in Knocked Corporation. | Impaired | Yes |

# ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    Class 1 – Priority Non-Tax Claims Against Entrust Energy, Inc.

Class 1 consists of the Allowed Priority Non-Tax Claims asserted against Entrust Energy, Inc. The legal, equitable, and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a different treatment of such Claim, each such Holder shall receive, from the Entrust Energy, Inc.'s Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Priority Non-Tax Claim (including interest and fees as applicable) on the Effective Date or as soon thereafter as is practicable.

Class 1 is Unimpaired.  The Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

### 4.2    Class 2 – Ad Valorem Tax Claims Against Entrust Energy, Inc.

Class 2 consists of the Ad Valorem Tax Claims of Harris County, Spring Independent School District, and Grand Lakes Municipal Utility District No. 4 against Entrust Energy Inc. The legal, equitable, and contractual rights of the Holders of Class 2 claims are unaltered by the Plan. Except to the extent that a Holder of an Allowed Ad Valorem Tax Claim against the Debtors agrees to a different treatment of such Claims, each such Holder shall receive, from the indebted Debtor's Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Ad Valorem Tax Claim on the Effective Date (including interest and fees as applicable) or as soon thereafter as is practicable.

Class 2 is Unimpaired.  The Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

### 4.3    Class 3 – Secured Claim Asserted by Shell Energy North America (US), LP Against Entrust Energy, Inc.

Class 3 consists of the Secured Claim asserted by Shell Energy against Entrust Energy, Inc. (the "Class 3 Claim").  By the Class 3 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 3 Claim is subject to litigation as part of the case styled *Entrust Energy, Inc., Entrust Energy East, Inc., and Power of Texas Holdings, Inc. v. Shell Energy North America (US), L.P., and Shell Trading Risk Management, LLC*, Adv. Pro. No. 21-3930 (together with any subsequently commenced litigation, the "Shell Litigation").   Upon a final determination of the allowance, if any, of the Class 3 Claim, the holder of the Class 3 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 3 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

15

The Class 3 Claim is Unimpaired, and the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan.

### 4.4 Class 4 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy, Inc.

Class 4 consists of the Secured Claim asserted by Shell Trading against Entrust Energy, Inc. (the "Class 4 Claim"). By the Class 4 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 4 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 4 Claim, the holder of the Class 4 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 4 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 4 Claim is Unimpaired, and the Holder of the Class 4 Claim is not entitled to vote to accept or reject the Plan.

### 4.5 Class 5 – Convenience Class Unsecured Claims Asserted Against Entrust Energy, Inc.

Class 5 consists of the Allowed Convenience Class Unsecured Claims asserted against Entrust Energy, Inc. In full and complete satisfaction, settlement, release, and discharge of its Allowed Class 5 Claim, each Holder of an Allowed Class 5 Claim shall receive payment from Liquidating Trust within 60 days after the later of the Effective Date or such claim becoming an Allowed Claim, of 90% of its Allowed Class 5 Claim without interest (the "Convenience Class Payment"). Following the Convenience Class Payment, the holders of Class 5 Claims shall not be entitled to any further distributions.

The Class 5 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.6 Class 6 – General Unsecured Claims Asserted Against Entrust Energy, Inc.
Class 6 consists of the general unsecured claims asserted against Entrust Energy, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Entrust Energy Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 6 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.7 Class 7 – Equity Interests in Entrust Energy, Inc.

Class 7 consists of the Equity Interests in Entrust Energy, Inc. All Equity Interests in the Entrust Energy, Inc. shall be cancelled on the Effective Date. In full and complete satisfaction,

16

settlement, release, and discharge of any Allowed Class 7 Interest, each Holder of an Allowed Class 7 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Entrust Energy Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 6 Claims.

The Class 7 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.8    Class 8 – Secured Claim Asserted by Shell Energy North America (US), LP Against Entrust Treasury Management Services, Inc.

Class 8 consists of the Secured Claim asserted by Shell Energy against Entrust Treasury Management Services, Inc. (the "Class 8 Claim"). By the Class 8 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 8 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 8 Claim, the holder of the Class 8 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 8 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 8 Claim is Unimpaired, and the Holder of the Class 8 Claim is not entitled to vote to accept or reject the Plan.

### 4.9    Class 9 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Treasury Management Services, Inc.

Class 9 consists of the Secured Claim asserted by Shell Trading against Entrust Treasury Management Services, Inc. (the "Class 9 Claim"). By the Class 9 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 9 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 9 Claim, the holder of the Class 9 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 9 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 9 Claim is Unimpaired, and the Holder of the Class 9 Claim is not entitled to vote to accept or reject the Plan.

### 4.10    Class 10 - General Unsecured Claims Against Entrust Treasury Management Services, Inc.

Class 10 consists of the general unsecured claims asserted against Entrust Treasury Management Services, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 10 Claim, each Holder of an Allowed Class 10 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Entrust Treasury Management Services, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 10 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.11    Class 11- Equity Interests in Entrust Treasury Management Services, Inc.

Class 11 consists of the Equity Interests in Entrust Treasury Management Services, Inc. All Equity Interests in the Entrust Energy, Inc. shall be cancelled on the Effective Date. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 11 Interest, each Holder of an Allowed Class 11 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Entrust Treasury Management Services Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 10 Claims.

The Class 11 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.12    Class 12 - Secured Claim Asserted by Shell Energy North America (US), LP Against Entrust Energy East, Inc.

Class 12 consists of the Secured Claim asserted by Shell Energy against Entrust Energy East, Inc. (the "Class 12 Claim"). By the Class 12 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 12 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 12 Claim, the holder of the Class 12 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 12 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 12 Claim is Unimpaired, and the Holder of the Class 12 Claim is not entitled to vote to accept or reject the Plan.

### 4.13    Class 13 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy East, Inc.

Class 13 consists of the Secured Claim asserted by Shell Trading against Entrust Energy East, Inc. (the "Class 13 Claim"). By the Class 13 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the

Class 13 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 13 Claim, the holder of the Class 13 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.   Provided, however, to the extent that the Class 13 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 13 Claim is Unimpaired, and the Holder of the Class 13 Claim is not entitled to vote to accept or reject the Plan.

### 4.14   Class 14 - Convenience Class Unsecured Claims Against Entrust Energy East, Inc.

Class 14 consists of the Allowed Convenience Class Unsecured Claims asserted against Entrust Energy East, Inc.  In full and complete satisfaction, settlement, release, and discharge of its Allowed Class 14 Claim, each Holder of an Allowed Class 14 Claim shall receive payment from the Liquidating Trust within 60 days after the later of the Effective Date or such claim becoming an Allowed Claim, of 90% of its Allowed Class 14 Claim without interest.  Following the Convenience Class Payment, the holders of Class 14 Claims shall not be entitled to any further distributions.

The Class 14 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.15   Class 15 – General Unsecured Claims Against Entrust Energy East, Inc.

Class 15 consists of the general unsecured claims asserted against Entrust Energy East, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 15 Claim, each Holder of an Allowed Class 15 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Entrust Energy East, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 15 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.16   Class 16– Equity Interests in Entrust Energy East, Inc.

Class 16 consists of the Equity Interests in Entrust Energy East, Inc.  All Equity Interests in the Entrust Energy East, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 16 Interest, each Holder of an Allowed Class 16 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Entrust Energy East, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 15 Claims.

The Class 16 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.17   Class 17 – Secured Claim Asserted by Shell Energy North America (US), LP Against Power of Texas Holdings, Inc.

Class 17 consists of the Secured Claim asserted by Shell Energy against Power of Texas Holdings, Inc. (the "Class 17 Claim"). By the Class 17 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 17 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 17 Claim, the holder of the Class 17 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 17 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 17 Claim is Unimpaired, and the Holder of the Class 17 Claim is not entitled to vote to accept or reject the Plan.

### 4.18   Class 18 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Power of Texas Holdings, Inc.

Class 18 consists of the Secured Claim asserted by Shell Trading against Power of Texas Holdings, Inc. (the "Class 18 Claim"). By the Class 18 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 18 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 18 Claim, the holder of the Class 18 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 18 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 18 Claim is Unimpaired, and the Holder of the Class 18 Claim is not entitled to vote to accept or reject the Plan.

### 4.19   Class 19 – Convenience Class Unsecured Claims Against Power of Texas Holdings, Inc.

Class 19 consists of the Allowed Convenience Class Unsecured Claims asserted against Power of Texas Holdings, Inc. In full and complete satisfaction, settlement, release, and discharge of its Allowed Class 19 Claim, each Holder of an Allowed Class 19 Claim shall receive payment from the Liquidating Trust within 60 days after the later of the Effective Date or such claim becoming an Allowed Claim, of 90% of its Allowed Class 19 Claim without interest. Following the Convenience Class Payment, the holders of Class 19 Claims shall not be entitled to any further distributions.

The Class 19 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.20    Class 20- General Unsecured Claims Against Power of Texas Holdings, Inc.

Class 20 consists of the general unsecured claims asserted against Power of Texas Holdings, Inc.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 20 Claim, each Holder of an Allowed Class 20 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Power of Texas Holdings, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 20 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.21    Class 21 - Equity Interests in Power of Texas Holdings, Inc.

Class 21 consists of the Equity Interests in Power of Texas Holdings, Inc.  All Equity Interests in the Power of Texas Holdings, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 21 Interest, each Holder of an Allowed Class 21 interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Power of Texas Holdings, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 20 Claims.

The Class 21 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.22    Class 22 - Secured Claim Asserted by Shell Energy North America (US), LP Against Akyta Holdings, Inc.

Class 22 consists of the Secured Claim asserted by Shell Energy against Akyta Holdings, Inc. (the "Class 22 Claim").  By the Class 22 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 22 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 22 Claim, the holder of the Class 22 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 22 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 22 Claim is Unimpaired, and the Holder of the Class 22 Claim is not entitled to vote to accept or reject the Plan.

### 4.23    Class 23 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta Holdings, Inc.

Class 23 consists of the Secured Claim asserted by Shell Trading against Akyta Holdings, Inc. (the "Class 23 Claim"). By the Class 23 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 23 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 23 Claim, the holder of the Class 23 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 23 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 23 Claim is Unimpaired, and the Holder of the Class 23 Claim is not entitled to vote to accept or reject the Plan.

### 4.24    Class 24 - General Unsecured Claims Against Akyta Holdings, Inc.

Class 24 consists of the general unsecured claims asserted against Akyta Holdings, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 24 Claim, each Holder of an Allowed Class 24 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Akyta Holdings, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 24 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.25    Class 25 - Equity Interests in Akyta Holdings, Inc.

Class 25 consists of the Equity Interests in Akyta Holdings, Inc. All Equity Interests in the Akyta Holdings, Inc. shall be cancelled on the Effective Date. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 25 Interest, each Holder of an Allowed Class 25 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Akyta Holdings, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 24 Claims.

The Class 25 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.26    Class 26 - Priority Non-Tax Claims Against Enserve, Inc.

Class 26 consists of the Allowed Priority Non-Tax Claims asserted against Enserve, Inc. The legal, equitable, and contractual rights of the Holders of Class 26 Claims are unaltered by the Plan. Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a different treatment of such Claim, each such Holder shall receive, from the Enserve, Inc.'s Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Priority Non-Tax Claim on the Effective Date or as soon thereafter as is practicable.

22

Class 26 is Unimpaired.  The Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

### 4.27    Class 27 - Secured Claim of JP Morgan Chase Bank (NA) Against Enserve, Inc.

Class 27 consists of the Secured Claim of JP Morgan Chase (NA) against Enserve, Inc. To the extent the Class 27 Claim asserted by JP Morgan Chase is determined to be an Allowed Secured Claim, the legal, equitable, and contractual rights of the Holder of Class 27 Claim is unaltered by the Plan.  Enserve, Inc. specifically reserves all rights in connection with the asserted claim including the right to appeal any determination that the amounts owed in connection with the Class 27 Claim are not forgivable under applicable law.  Upon a final determination of the parties' rights in connection with asserted Class 27 Claim and to the extent the Class 27 Claim is deemed to be an Allowed Claim, the Holder of such Claim shall receive, from the Enserve, Inc.'s Estate Assets, Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim plus all applicable interest on the Effective Date or as soon thereafter as is practicable. Any deficiency claim of JP Morgan Chase (NA) will be treated under Class 31.

The Class 27 Claim is Unimpaired and, as such, is not entitled to vote to accept or reject the Plan.

### 4.28    Class 28 - Secured Claim Asserted by Shell Energy North America (US), LP Against Enserve, Inc.

Class 28 consists of the Secured Claim asserted by Shell Energy against Enserve, Inc. (the "Class 28 Claim").  By the Class 28 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including  any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 28 Claim is subject to litigation as part of the Shell Litigation.  Upon a final determination of the allowance, if any, of the Class 28 Claim, the holder of the Class 28 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 28 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 28 Claim is Unimpaired, and the Holder of the Class 28 Claim is not entitled to vote to accept or reject the Plan.

### 4.29    Class 29 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Enserve, Inc.

Class 29 consists of the Secured Claim asserted by Shell Trading against Enserve, Inc. (the "Class 29 Claim").  By the Class 29 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 29 Claim

23

is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 29 Claim, the holder of the Class 29 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 29 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 29 Claim is Unimpaired, and the Holder of the Class 29 Claim is not entitled to vote to accept or reject the Plan.

### 4.30    Class 30 - Convenience Class Unsecured Claims Against Enserve, Inc.

Class 30 consists of the Allowed Convenience Class Unsecured Claims asserted against Enserve, Inc.  In full and complete satisfaction, settlement, release, and discharge of its Allowed Class 30 Claim, each Holder of an Allowed Class 30 Claim shall receive payment from the Liquidating Trust within 60 days after the later of the Effective Date or such claim becoming an Allowed Claim, of 90% of its Allowed Class 30 Claim without interest.   Following the Convenience Class Payment, the holders of Class 30 Claims shall not be entitled to any further distributions.

The Class 30 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.31    Class 31 - General Unsecured Claims Against Enserve, Inc.

Class 31 consists of the general unsecured claims asserted against Enserve, Inc.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 31 Claim, each Holder of an Allowed Class 31 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Enserve, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 31 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.32    Class 32 - Equity Interests in Enserve, Inc.

Class 32 consists of the Equity Interests in Enserve, Inc.  All Equity Interests in the Entrust Energy, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 32 Interest, each Holder of an Allowed Class 32 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Enserve, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 31 Claims.

The Class 32 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.33    Class 33 - Secured Claim Asserted by Shell Energy North America (US), LP Against Akyta, Inc.

24

Class 33 consists of the Secured Claim asserted by Shell Energy against Akyta, Inc. (the "Class 33 Claim"). By the Class 33 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 33 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 33 Claim, the holder of the Class 33 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 33 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 33 Claim is Unimpaired, and the Holder of the Class 33 Claim is not entitled to vote to accept or reject the Plan.

### 4.34    Class 34 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta, Inc.

Class 34 consists of the Secured Claim asserted by Shell Trading against Akyta, Inc. The Class 34 Claim is unliquidated and subject to dispute by the Debtors. Shell Trading's rights, if any, related to the asserted Class 34 Claim will be litigated as part of the Shell Litigation. To the extent the Court in the Shell Litigation determines that Shell Trading is entitled to any rights in connection with its asserted Class 34 Claim those rights are unimpaired under the Plan, but subject to the claims of the Debtors. Both Shell Trading and the Debtors reserve all rights. Provided, however, to the extent that the Class 34 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 34 Claim is Unimpaired, and the Holder of the Class 34 Claim is not entitled to vote to accept or reject the Plan.

### 4.35    Class 35 - Convenience Class Unsecured Claims Against Akyta, Inc.

Class 35 consists of the Allowed Convenience Class Unsecured Claims asserted against Akyta, Inc. In full and complete satisfaction, settlement, release, and discharge of its Allowed Class 35 Claim, each Holder of an Allowed Class 35 Claim shall receive payment from the Liquidating Trust within 60 days after the later of the Effective Date or such claim becoming an Allowed Claim, of 90% of its Allowed Class 35 Claim without interest. Following the Convenience Class Payment, the holders of Class 35 Claims shall not be entitled to any further distributions.

The Class 35 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.36    Class 36 - General Unsecured Claims Against Akyta, Inc.

Class 36 consists of the general unsecured claims asserted against Akyta, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 36 Claim, each Holder of an Allowed Class 36 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Akyta, Inc's Liquidating Assets less applicable expenses.

The Class 36 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.37    Class 37 - Equity Interests in Akyta, Inc.

Class 37 consists of the Equity Interests in Akyta, Inc. All Equity Interests in the Akyta, Inc., shall be cancelled on the Effective Date. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 37 Interest, each Holder of an Allowed Class 37 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Akyta, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 36 Claims.

The Class 37 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.38    Class 38 - Secured Claim Asserted by Shell Energy North America (US), LP Against Energistics, Inc.

Class 38 consists of the Secured Claim asserted by Shell Energy against Energistics, Inc. (the "Class 38 Claim"). By the Class 38 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 38 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 38 Claim, the holder of the Class 38 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 38 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 38 Claim is Unimpaired, and the Holder of the Class 38 Claim is not entitled to vote to accept or reject the Plan.

### 4.39    Class 39 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Energistics, Inc.

Class 39 consists of the Secured Claim asserted by Shell Trading against Energistics, Inc. (the "Class 39 Claim"). By the Class 39 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 39 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 39 Claim, the holder of the Class 39 Claim shall be entitled to receive cash in

an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 39 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 39 Claim is Unimpaired, and the Holder of the Class 39 Claim is not entitled to vote to accept or reject the Plan.

### 4.40    Class 40 - General Unsecured Claims Against Energistics, Inc.

Class 40 consists of the general unsecured claims asserted against Energistics, Inc.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 40 Claim, each Holder of an Allowed Class 40 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Energistics, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 40 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.41    Class 41 - Equity Interests in Energistics, Inc.

Class 41 consists of the Equity Interests in Energistics, Inc.  All Equity Interests in the Energistics, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 41 Interest, each Holder of an Allowed Class 41 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Energistics, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 40 Claims.

The Class 41 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.42    Class 42 - Secured Claim Asserted by Shell Energy North America (US), LP Against SPH Investments, Inc.

Class 42 consists of the Secured Claim asserted by Shell Energy against SPH Investments, Inc. (the "Class 42 Claim").  By the Class 42 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 42 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 42 Claim, the holder of the Class 42 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 42 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 42 Claim is Unimpaired, and the Holder of the Class 42 Claim is not entitled to vote to accept or reject the Plan.

**4.43     Class 43 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against SPH Investments, Inc.**

Class 43 consists of the Secured Claim asserted by Shell Trading against SPH Investments, Inc. (the "Class 43 Claim").  By the Class 43 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 43 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 43 Claim, the Holder of the Class 43 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 43 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 43 Claim is Unimpaired, and the Holder of the Class 43 Claim is not entitled to vote to accept or reject the Plan.

**4.44     Class 44 - General Unsecured Claims Against SPH Investments, Inc.**

Class 44 consists of the general unsecured claims asserted against SPH Investments, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 44 Claim, each Holder of an Allowed Class 44 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from SPH Investments, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 44 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.45     Class 45 - Equity Interests in SPH Investments, Inc.**

Class 45 consists of the Equity Interests in SPH Investments, Inc.  All Equity Interests in the SPH Investments, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 45 Interest, each Holder of an Allowed Class 45 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from SPH Investments, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 44 Claims.

The Class 45 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.46     Class 46 - Secured Claim Asserted by Shell Energy North America (US), LP Against Akyta IP, Inc.**

Class 46 consists of the Secured Claim asserted by Shell Energy against Akyta IP, Inc. (the "Class 46 Claim").  By the Class 46 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law

and in any applicable agreements.  The allowance, amount, and other rights of the Class 46 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 46 Claim, the holder of the Class 46 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 46 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 46 Claim is Unimpaired, and the Holder of the Class 46 Claim is not entitled to vote to accept or reject the Plan.

### 4.47    Class 47 - Secured Claim Asserted by Shell Trading Risk Management, LLC Against Akyta IP, Inc.

Class 47 consists of the Secured Claim asserted by Shell Trading against Akyta IP, Inc. (the "Class 47 Claim").  By the Class 47 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 47 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 47 Claim, the holder of the Class 47 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 47 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 47 Claim is Unimpaired, and the Holder of the Class 47 Claim is not entitled to vote to accept or reject the Plan.

### 4.48    Class 48- General Unsecured Claims Against Akyta IP, Inc.

Class 48 consists of the general unsecured claims asserted against Akyta IP, Inc.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 48 Claim, each Holder of an Allowed Class 48 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Akyta IP, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 48 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.49    Class 49 – Equity Interests in Akyta IP, Inc.

Class 49 consists of the Equity Interests in Akyta IP, Inc.  All Equity Interests in the Akyta IP, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 49 Interest, each Holder of an Allowed Class 49 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Akyta IP, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 49 Claims.

The Class 49 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.50    Class 50 – General Unsecured Claims Against Strategic Power Holdings, LLC

Class 50 consists of the general unsecured claims asserted against Strategic Power Holdings, LLC.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 50 Claim, each Holder of an Allowed Class 50 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Strategic Power Holdings, LLC's Liquidating Trust Assets less applicable expenses.

The Class 50 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.51    Class 51 – Equity Interest in Strategic Power Holdings, LLC

Class 51 consists of the Equity Interests in Strategic Power Holdings, LLC.  All Equity Interests in the Strategic Power Holdings, LLC, shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 51 Interest, each Holder of an Allowed Class 51 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Strategic Power Holdings, LLC's Liquidating Trust Assets less applicable expenses and after payment in full of all Class 51 Claims.

The Class 51 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.52    Class 52 - General Unsecured Claims Against NGAE, Inc.

Class 52 consists of the general unsecured claims asserted against NGAE, Inc.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 52 Claim, each Holder of an Allowed Class 52 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from NGAE, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 52 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.53    Class 53 - Equity Interests in NGAE, Inc.

Class 53 consists of the Equity Interests in NGAE, Inc.  All Equity Interests in the NGAE, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 53 Interest, each Holder of an Allowed Class 53 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from NGAE, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 53 Claims.

The Class 53 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**4.54     Class 54 – Secured Claim Asserted by Shell Energy North America (US), L.P. Against Surge Direct Sales, Inc.**

Class 54 consists of the Secured Claim asserted by Shell Energy against Surge Direct Sales, Inc. (the "Class 54 Claim"). By the Class 54 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 54 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 54 Claim, the holder of the Class 54 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 54 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 54 Claim is Unimpaired, and the Holder of the Class 54 Claim is not entitled to vote to accept or reject the Plan.

**4.55     Class 55 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Surge Direct Sales, Inc.**

Class 55 consists of the Secured Claim asserted by Shell Trading against Surge Direct Sales, Inc. (the "Class 55 Claim"). By the Class 55 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements. The allowance, amount, and other rights of the Class 55 Claim is subject to litigation as part of the Shell Litigation. Upon a final determination of the allowance, if any, of the Class 55 Claim, the holder of the Class 55 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest. Provided, however, to the extent that the Class 55 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 55 Claim is Unimpaired, and the Holder of the Class 55 Claim is not entitled to vote to accept or reject the Plan.

**4.56     Class 56 – General Unsecured Claims Against Surge Direct Sales, Inc.**

Class 56 consists of the general unsecured claims asserted against Surge Direct Sales, Inc. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 56 Claim, each Holder of an Allowed Class 56 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Surge Direct Sales, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 56 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

31

### 4.57    Class 57 – Equity Interests in Surge Direct Sales, Inc.

Class 57 consists of the Equity Interests in Surge Direct Sales, Inc.  All Equity Interests in the Surge Direct Sales, Inc. shall be cancelled on the Effective Date.   In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 57 Interest, each Holder of an Allowed Class 57 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Surge Direct Sales, Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 57 Claims.

The Class 57 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.58    Class 58 – Secured Claim Asserted by Shell Energy North America (US), L.P. Against Entrust Energy Operations, Inc.

Class 58 consists of the Secured Claim asserted by Shell Energy against Entrust Energy Operations, Inc. (the "Class 58 Claim").  By the Class 58 Claim, Shell Energy retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 58 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 58 Claim, the holder of the Class 58 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 58 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Energy related to this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 58 Claim is Unimpaired, and the Holder of the Class 58 Claim is not entitled to vote to accept or reject the Plan.

### 4.59    Class 59 – Secured Claim Asserted by Shell Trading Risk Management, LLC Against Entrust Energy Operations, Inc.

Class 59 consists of the Secured Claim asserted by Shell Trading against Entrust Energy Operations, Inc. (the "Class 59 Claim").  By the Class 59 Claim, Shell Trading retains all of its legal, equitable and contractual rights, including any priority liens on the Debtor's property and any rights of setoff and recoupment, and interest will accrue from the Petition Date as provided under applicable law and in any applicable agreements.  The allowance, amount, and other rights of the Class 59 Claim is subject to litigation as part of the Shell Litigation.   Upon a final determination of the allowance, if any, of the Class 59 Claim, the holder of the Class 59 Claim shall be entitled to receive cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Claim, plus interest.  Provided, however, to the extent that the Class 59 Claim is an Allowed Secured Claim, any unsecured deficiency claim of Shell Trading related to

this claim shall be treated as a general unsecured claim in the general unsecured class for this Debtor.

The Class 59 Claim is Unimpaired, and the Holder of the Class 59 Claim is not entitled to vote to accept or reject the Plan.

### 4.60     Class 60 – General Unsecured Claims Against Entrust Energy Operations, Inc.

Class 60 consists of the general unsecured claims asserted against Entrust Energy Operations, Inc.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 60 Claim, each Holder of an Allowed Class 60 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Entrust Energy Operations, Inc.'s Liquidating Trust Assets less applicable expenses.

The Class 60 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.61     Class 61 – Equity Interests in Entrust Energy Operations, Inc.

Class 61 consists of the Equity Interests in Entrust Energy Operations, Inc.  All Equity Interests in the Entrust Energy Operations, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 61 Interest, each Holder of an Allowed Class 61 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Entrust Energy Operations Inc.'s Liquidating Trust Assets less applicable expenses and after payment in full of all Class 61 Claims.

The Class 61 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.62     Class 62 - Convenience Class Unsecured Claims Against Knocked Corporation

Class 62 consists of the Allowed Convenience Class Unsecured Claims asserted against Knocked Corporation.  In full and complete satisfaction, settlement, release, and discharge of its Allowed Class 62 Claim, each Holder of an Allowed Class 62 Claim shall receive payment from the Liquidating Trust within 60 days after the later of the Effective Date or such claim becoming an Allowed Claim, of 90% of its Allowed Class 62 Claim without interest.  Following the Convenience Class Payment, the holders of Class 62 Claims shall not be entitled to any further distributions.

The Class 62 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.63     Class 63 - General Unsecured Claims Against Knocked Corporation.

33

Class 63 consists of the general unsecured claims asserted against Knocked Corporation. In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 63 Claim, each Holder of an Allowed Class 63 Claim shall receive a Beneficial Interest in the Liquidating Trust Cash derived from Knocked Corporation's Liquidating Trust Assets less applicable expenses.

The Class 63 Claims are Impaired and, as such, are entitled to vote to accept or reject the Plan.

### 4.64    Class 64 - Equity Interests in Knocked Corporation.

Class 64 consists of the Equity Interests in Knocked Corporation.  All Equity Interests in the Entrust Energy Operations, Inc. shall be cancelled on the Effective Date.  In full and complete satisfaction, settlement, release, and discharge of any Allowed Class 64 Interest, each Holder of an Allowed Class 64 Interest shall receive a Subordinated Beneficial Interest in the Liquidating Trust Cash derived from Knocked Corporation's Liquidating Trust Assets less applicable expenses and after payment in full of all Class 64 Claims.

The Class 64 Interests are Impaired and, as such, are entitled to vote to accept or reject the Plan.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF**
**THE PLAN; EFFECT OF REJECTION BY ONE**
**OR MORE CLASSES OF CLAIMS OR INTERESTS**

**5.1    Class Acceptance Requirement.** A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan. A Class of Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Equity Interests in such Class that have voted on the Plan.

**5.2    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown".** If any Class of any Debtor rejects this Plan, that Debtor will request confirmation of the Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes. Subject to Section 14.5 of this Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**5.3    Elimination of Vacant Classes.** Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**5.4**     **Voting Classes; Deemed Acceptance by Non-Voting Classes.** If a Class contains Claims or Equity Interests eligible to vote and no holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Equity Interests in such Class

### ARTICLE VI
### PROVISIONS GOVERNING DISTRIBUTIONS

**6.1**     **General Settlement of Claims and Equity Interests**.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

**6.2**     **Distribution Record Date**.  On the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their agents, shall be deemed closed, and there shall be no further changes in the record holders, or record ownership of any of the Claims or Equity Interests.  Except as set forth in Section 6.3, the Liquidating Trustee shall have no obligation to recognize any transfer of record ownership of the Claims, or Equity Interests occurring on or after the Distribution Record Date.

**6.3**     **Transfer of Claim**.  In the event that the Holder of any Claim transfers such Claim after the Effective Date, such Holders shall immediately advise the Liquidating Trustee in writing of such transfer and provide sufficient written evidence of such transfer.  The Liquidating Trustee shall be entitled to assume that no transfer of any Claim has been made unless and until the Liquidating Trustee shall have received written notice to the contrary.

**6.4**     **Allocation of Professional Fees.**  All Allowed fees owed by the Debtors to the Retained Professionals in these Bankruptcy Cases prior to the Effective Date shall be allocated based upon the distributable total net asset proceeds (excluding intercompany receivables) for each of the Debtors.  Following the Effective Date, payable professional fees will be paid out of the Professional Fee Escrow Account for the respective Debtor who received the services. All fees owed to the Ordinary Course Professionals will be allocated in accordance with existing intercompany arrangements recognized by the Debtors

**6.5**     **Method of Distributions Under the Plan**.

(a)     **Procedure for Distribution of Liquidating Trust Assets**. The Liquidating Trustee shall distribute Cash, in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts (i) as would be distributable to a Holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the applicable Liquidating Trust Assets, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the  Liquidating Trust or on the Liquidating Trust Assets), and (iv) to satisfy other

liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(b)     **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions to any Holder of an Allowed Claim will be made to the Holder of each Allowed Claim at the address of such Holder as listed in the Schedules, or on the books and records of the Debtors or their agents unless the Debtors or Liquidating Trustee have been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such Holder that provides an address for such Holder different from the address reflected in the Schedules or in the Debtors' books and records.

(c)     **Unclaimed Distributions.**

(i)     If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date the check was issued, then the Liquidating Trust shall provide written notice to such Holder that, unless such Holder negotiates the check within thirty (30) days after the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan with respect to such Claim.

(ii)     If a check for a Distribution under the Plan is returned to the Liquidating Trust due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Trustee as to such check within sixty (60) days of the date of such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan with respect to such Claim.

(iii)     Any unclaimed Distributions shall become Liquidating Trust Assets to be distributed to Holders of Allowed Claims pursuant to the terms of the Plan.

**6.6     Withholding and Reporting Requirements**.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Liquidating Trustee shall, to the extent practicable, comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  The Liquidating Trustee may, if necessary or appropriate to comply with applicable withholding requirements imposed on him or her, withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within sixty (60) days from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's

Distribution shall be treated as unclaimed property in accordance with Section 6.5(c) herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

**6.7** **Minimum Distributions**. With the exception of payments made to any Holder of a Convenience Class Unsecured Claim, no payment of Cash less than $50 shall be made by the Liquidating Trustee, and any payment required to be made hereunder that would total less than $50 shall be deemed waived.

**6.8** **No Payments of Fractional Dollars.** Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**6.9** **Setoff and Recoupment**. The Liquidating Trustee may, but shall not be required to, set off against, or recoup from, any Claim (for purposes of determining the Allowed amount of such Claim, on which distribution shall be made), any claims or defenses of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee or the Estates of any right of setoff, recoupment claims, or other rights or Causes of Action that the Debtors, their respective Estates, or any of their respective successors may have against the Holder of such Claim; *provided, however* that this section 6.9 shall not apply to ERCOT in connection with section 8.7(c) of the Plan.

### ARTICLE VII
### MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**7.1** **General Overview of the Plan**. The purpose of the Plan is to provide for the allocation and distribution of the Estate Assets to the Holders of Claims against the Debtors in accordance with the payment priorities established by the Bankruptcy Code. To accomplish this, the Plan contemplates the creation of the Liquidating Trust controlled by the Liquidating Trustee. On the Effective Date of the Plan, the Liquidating Trust Assets will be transferred to the Liquidating Trust. The Liquidating Trust will liquidate such assets in an orderly fashion for the benefit of the Debtors' respective Creditors. The Plan also provides that the Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Convenience Class Unsecured Claims will be paid in full on the Effective Date or the date that such Claims become Allowed Claims.

**7.2** **No Substantive Consolidation.** The Plan is being proposed as a joint plan of liquidation of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of liquidation for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Equity Interests set forth in the Plan. The Liquidating Trustee shall be responsible for segregating each Debtors' portion of the Liquidating Trust Assets. For the avoidance of doubt, any provision of the Plan or Disclosure Statement referencing payments from the Liquidating Trust Assets shall refer to payment to a Holder of an Allowed Claim solely from the Liquidating Trust Assets attributable to the indebted Debtor.

**7.3**     **Transfers of Property to the Liquidating Trust**. On the Effective Date, the Debtors shall be deemed to have irrevocably transferred and assigned the Liquidating Trust Assets to the Liquidating Trust, to hold in trust for the benefit of the Holders of Allowed Claims against the Debtors, pursuant to the terms of this Plan and of the Liquidating Trust Agreement.

Except as otherwise provided by this Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Equity Interests, in accordance with section 1141 of the Bankruptcy Code, except for validly perfected liens on Liquidating Trust Assets, which shall continue to encumber the Liquidating Trust Assets to the same validity, extent and priority as existed prior to the Effective Date.  For the avoidance of doubt, it is the intent of this section that all assets of the Debtors be transferred to the Liquidating Trust, and that after the Effective Date, the Debtors will retain no assets of any nature whatsoever.

**7.4**     **Dissolution of the Debtors**. Following the transfers contemplated in Section 7.3, above, the remaining Debtors shall be deemed dissolved.  The Liquidating Trustee shall have all power to wind up the affairs of each of the Debtors under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Bankruptcy Code, the Plan, the Liquidating Trust Agreement, and may, but shall not be required to, dissolve the Debtors under applicable state law.

**7.5**     **Professional Fee Escrow Account.** On the Effective Date, the Liquidating Trustee shall establish a Professional Fee Escrow Account and shall fund such Professional Fee Escrow Account with Retained Cash in an amount equal to the sum of the Professional Fee Claims. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Debtors' Estates and shall not vest with the Liquidating Trustee or the Liquidating Trust. Any amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims are paid shall become available for Distribution to holders of Allowed Claims in the priority of payment provided for in accordance with the provisions of the Plan.

**7.6**     **The Liquidating Trust.**

(a)     **Formation of Liquidating Trust**.  On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust.

(b)     **Material Terms of the Liquidating Trust Agreement**. The following provisions of this section are intended to summarize the material terms of the Liquidating Trust Agreement, which shall control the formation, operations and dissolution of the Liquidating Trust. In the event of a conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

(i)     **Purpose of Liquidating Trust**.  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 30.1.7701-4(d), with no objective to continue or engage in the pursuit of a trade or business.

(ii) **Appointment of the Liquidating Trustee**.  The Liquidating Trustee shall be Anna Phillips.  The designation of Ms. Phillips as the Liquidating Trustee shall be effective as of the Effective Date without the need for a further order of the Bankruptcy Court.  The Liquidating Trustee shall administer the Plan and the Liquidating Trust and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code.  The Liquidating Trustee shall be entitled to compensation in an amount to be agreed upon between the Creditors' Committee and the Liquidating Trustee, with such amount to be disclosed in the Plan Supplement.

(iii) **Retention and Compensation of the Liquidating Trustee and Professionals**. The Liquidating Trustee may retain counsel and other professionals to assist in the Liquidating Trustee's duties on such terms as the Liquidating Trustee deems appropriate as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee may retain professionals who represented parties in interest in the Bankruptcy Cases.  The professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation from the Liquidating Trust as determined in the Liquidating Trustee's discretion.

(iv) **Governance of the Liquidating Trust**.  The Liquidating Trust shall be governed in accordance with the Liquidating Trust Agreement and consistent with the Plan, and subject to the Oversight Committee.

(v) **Oversight Committee**.  A three-member oversight committee (the "Oversight Committee") will be formed on the Effective Date.  The Oversight Committee shall be comprised of two members designated by the Creditors' Committee and one member designated by the Debtors, all of whom will be identified in the Plan Supplement.  The Oversight Committee shall have the responsibility to review and advise the Liquidating Trustee with respect to the liquidation and Distribution of the Estates' Assets in accordance herewith and the Liquidating Trust Agreement.

(vi) **Authority of Liquidating Trustee**. Subject only to the limitations contained in this Plan or in the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers:  (A) the power and authority to hold, manage, sell and distribute the Liquidating Trust Assets in accordance with the Plan; (B) the power and authority to prosecute and resolve, in the name of the applicable Debtors and/or the name of the Liquidating Trust, the Liquidating Trust Assets; (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtors that are payable from the Liquidating Trust Assets; (D) the power and authority to perform such other functions as are provided in the Plan and the Liquidating Trust Agreement; and (E) any other act that the Liquidating Trustee deems in the best interest of the Liquidating Trust; *provided*, *however* that the Liquidating Trustee shall obtain the consent from the Oversight Committee prior to settling any litigation claims wherein the Liquidating Trust's asserted claim is in excess of $250,000; *provided further, however* that before settling claims held by Bandon River Capital, LLC ("Bandon") or Nippon, the Liquidation Trustee shall provide 10 days' notice to ERCOT by email of the Liquidation Trustee's intent to settle such claims.  If ERCOT objects to such proposed settlement for any reason within the 10-day period, the Liquidation Trustee shall be required to seek Bankruptcy Court approval of such settlement by filing a motion, which shall be adjudicated pursuant to Bankruptcy Rule 9019.

(vii)     **Removal of the Liquidating Trustee**. The Liquidating Trustee may be removed from his or her respective position for cause upon a motion by any Person, including any member of the Oversight Committee, and approval by the Bankruptcy Court.  If the Liquidating Trustee is removed, the Oversight Committee shall appoint a successor to serve as Liquidating Trustee in accordance with the Liquidating Trust Agreement.

(viii)     **Distribution of Liquidating Trust Assets**. The Liquidating Trustee shall be responsible for making distributions from the Liquidating Trust as provided by the Plan and the Liquidating Trust Agreement.  Because the Plan does not contemplate substantive consolidation, the Liquidating Trustee will be responsible for keeping the liquidation and distribution of assets of each of the Debtors separate as provided in the Plan and will be able to account for all distributions under the Plan. Any Liquidating Trust Assets available for distribution shall be applied: (a) first, to pay or reimburse, as applicable the reasonable, documented out-of-pocket fees, costs, expenses and liabilities of the Liquidating Trust, Liquidating Trustee, any professionals retained by the Liquidating Trust, and Oversight Committee, and any Allowed Administrative Expense Claims not paid on the Effective Date for that particular Debtor; (b) second, to distributions to the Holders of Beneficial Interests for that particular Debtor; and (c) third, to the extent that the Holders of Beneficial Interests are paid in full, to the Subordinated Beneficial Interests of that particular Debtor.

(ix)     **Dissolution**. The Liquidating Trust, Liquidating Trustee, and Oversight Committee shall be discharged or dissolved, as the case may be, at such time as (i) the Liquidating Trust Assets have been liquidated and (ii) all distributions required to be made by the Liquidating Trust under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date, absent Bankruptcy Court approval.

(x)     **Limitation of Liability and Indemnification of Liquidating Trustee**. The Liquidating Trustee, the Oversight Committee, their respective members, employees, employers, designees, or professionals, or any of their duly designated agents or representatives shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trust, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses incurred in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  Any indemnification claim of the Liquidating Trust Parties shall be satisfied from the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

(xi)     **Non-transferability of Beneficial Interests**.  The Beneficial Interests in the Liquidating Trust shall not be certificated and are not transferable (except as otherwise provided in the Liquidating Trust Agreement).

**7.7**     **Preservation of Causes of Action**.

(a)     On the Effective Date, the Causes of Action shall be vested exclusively in the Liquidating Trust, except to the extent a Creditor or other third party has, prior to the Effective

Date, been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Liquidating Trustee will have the rights, powers, and privileges to pursue, not pursue, settle, release, or enforce any Causes of Action without seeking approval from the Bankruptcy Court. The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtors state that any director, officers, member or employee of any Debtor and any Person that engaged in business or other transactions with the Debtors prior to the Debtors' respective Petition Dates or that received payments from the Debtors prior to the Debtors' respective Petition Dates may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

(b)     No Creditor or other Person should vote for the Plan or otherwise rely on Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST. Creditors are advised that legal rights, claims, and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim, or Cause of Action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors, the Liquidating Trust, or the Liquidating Trustee do not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS. To the fullest extent allowed under applicable law, nothing in the Plan operates as a release of any Cause of Action, except as expressly provided otherwise, nor shall the Debtors' failure to describe with specificity any Cause of Action estop or preclude the Liquidating Trust from pursuing such Causes of Action.

(c)     Notwithstanding the foregoing, the Debtors have made a good faith effort to identify and disclose known Causes of Action. A schedule identifying the Debtors' known Causes of Action to be transferred and retained by the Liquidating Trust are attached to the Disclosure Statement as **Exhibit C**.

**7.8     Effectuating Documents and Further Transactions**. The Debtors and the Liquidating Trustee are authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**7.9     Reliance on Documents**. The Liquidating Trustee may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper entity, including, without limitation, claims lists, and data provided to the Liquidating Trustee by the

Claims Agent, the Debtors, the Creditors' Committee, or the Debtors' or Creditors' Committee's financial advisor, upon which the Liquidating Trustee shall base Distributions.

**7.10**   **Corporate Action.**  The Plan will be administered by the Liquidating Trustee and all actions taken under the Plan in the name of the Debtors shall be taken through the Liquidating Trustee in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

**7.11**   **Liquidating and Dissolution of Debtors**.  On the Effective Date, without the necessity for any other or further action to be taken by or on behalf of the Debtors, and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the members of the board of directors or managers, as the case may be, and the respective officers, of each of the Debtors shall be deemed to have been removed, and each such Debtor shall be deemed dissolved for all purposes unless the Liquidating Trustee determines that dissolution can have any adverse impact on the Liquidating Trust Assets or any Collateral; *provided*, *however*, that neither the Debtors nor any party released pursuant to ARTICLE XI of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors.

**7.12**   **Closing of the Bankruptcy Cases**.  At such time as the Liquidating Trustee deems appropriate and in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Bankruptcy Cases.

**7.13**   **Preservation and Abandonment of Records**.  The Debtors shall preserve for the benefit of the Liquidating Trustee the Debtors' books and records and transfer the same to the Liquidating Trustee. After the Effective Date, the Liquidating Trustee shall preserve or abandon (with or without destruction) the Debtors' books and records as deemed appropriate by the Liquidating Trustee in the exercise of the Liquidating Trustee's reasonable business judgment.

**7.14**   **General Disposition of Assets**.  Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of the Plan, as soon as is reasonably practicable after the Effective Date, the Liquidating Trustee shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash assets in such manner as the Liquidating Trustee shall determine in his judgment in consultation with secured Creditors (to the extent any such assets are Collateral of secured Creditors), but in no event shall the Liquidating Trustee be prevented from returning assets that are Collateral of a secured Creditor to such secured Creditor in a commercially reasonable manner.

**7.15**   **Execution of Documents to Effectuate Plan**.  From and after the Effective Date, the Liquidating Trustee shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Debtors and the Liquidating Trustee to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.

**7.16**   **Disallowance of Claims Without Further Order of the Court**.  As of the Effective Date, any Scheduled Claim designated as disputed, contingent, or unliquidated in amount and for which a proof of Claim has not been filed by the Creditor by the applicable Bar Date shall be deemed Disallowed and expunged. All Scheduled Claims that correspond to a proof of Claim

42

filed by a particular Creditor by the applicable Bar Date shall be deemed to have been superseded by such later filed proof of Claim, and the Scheduled Claim, regardless of priority, shall be expunged from the Claims register; *provided*, *however*, that such proofs of Claim shall be subject to objection in accordance with Section 8.1 hereof**Error! Reference source not found.**.

**7.17    Cancellation of Existing Securities and Agreements**. Except for the purpose of evidencing a right to distribution under this Plan, on the Effective Date, any document, agreement, or instrument evidencing any Claim or Interest shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be deemed extinguished. The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

**7.18    Cancellation of Existing Security Interests**. Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the holder of such Allowed Secured Claim shall deliver to the Debtors any Collateral or other property of the Debtors held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

**7.19    Return of Deposits**. Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits, provided by the Debtors to any entity at any time, to the extent not returned to the Debtors prior to the Effective Date, shall be remitted to the Liquidating Trustee, without deduction or offset of any kind, except for such deductions or offsets as allowed under the agreements between the Debtors and the Entities holding such security deposits

**7.20    Approval of Plan Documents**. The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder. Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions. On the Effective Date, the Debtor shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

**7.21    Wind Down of the Estates and Distribution of Proceeds**. After the Effective Date, all non-Cash assets of the Estates not previously released, disposed of or transferred shall be sold or otherwise liquidated or abandoned.

## ARTICLE VIII
## PROCEDURES FOR DISPUTED CLAIMS

**8.1    Objections to Claims**.  Other than with respect to Professional Fee Claims, only the Liquidating Trustee shall be entitled to object to Claims after the Effective Date. Any objections to Claims (other than Professional Fee Claims), which Claims have been filed on or

before the later of the Confirmation Date and the applicable Bar Date, if any, shall be served and filed on or before the later of: (a) one year after the Effective Date (or such applicable Bar Date if such applicable Bar Date is after the Effective Date); or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) of this Section. Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Liquidating Trustee unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) by (i) first class mail, postage prepaid, or (ii) if available, electronic mail, on any counsel that has appeared on the claimant's behalf in the Bankruptcy Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. After the Effective Date, the Liquidating Trustee shall be entitled to determine, in his or her reasonable discretion, that the cost and expense of pursuing claims objections outweighs the benefits to be advanced by filing one or more objections.

**8.2**     [Intentionally Omitted]

**8.3     No Distribution Pending Allowance**.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of the Disputed portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**8.4     Estimation**.  Pursuant to the Plan, the Debtors or the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim, regardless of whether the Debtors or any other party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

Notwithstanding anything to the contrary in the Plan or the Liquidating Trust Agreement, the Debtors, the Liquidating Trustee or the Trust may only estimate the ERCOT Claim for purposes of calculating and making Distributions under the Plan and for establishment of claims reserves pursuant to an order of the Bankruptcy Court.  ERCOT reserves all rights to oppose such estimation, including, but not limited to, arguing that estimation is not appropriate with regard to

the ERCOT Claim, and the Debtors, Liquidating Trustee and Trust reserve all rights, claims or otherwise to, among other things, argue otherwise in connection therewith.

**8.5** **Disallowance of Certain Claims and Equity Interests**.  All Claims held by Persons against whom the Debtors have obtained a Final Order establishing liability for a cause of action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against the Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over the Debtors or Liquidating Trustee.

**8.6** **Controversy Concerning Impairment**.  If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

**8.7** **Disputed Claims**.

(a) **No Distribution Pending Allowance**.  Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be required to be made on account of such Claim unless and until such Disputed Claim becomes Allowed in its entirety.

(b) **Establishment of Disputed Priority Claims Reserve**. Subject to Section 8.4, on the Effective Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall reserve from Cash on hand for the benefit of each holder of a Disputed Administrative Expense Claim, Disputed Priority Tax Claim, and Disputed Priority Non-Tax Claim, Cash in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Liquidating Trustee; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending on the Effective Date, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable. The Liquidating Trustee, in its reasonable discretion, may increase the amount reserved as to any such particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "Disputed Priority Claims Reserve."

(c) **Establishment of Disputed General Unsecured Claims Reserve**. Subject to Section 8.4, prior to any Distributions to holders of Allowed General Unsecured Claims, the Liquidating Trustee shall reserve from the Cash on hand, for the benefit of each holder of a Disputed General Unsecured Claim, Cash in an amount equal to the Pro Rata Distribution to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) except with respect to ERCOT, if no Estimation Order has

been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Liquidating Trustee; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable, provided, however, that for purposes of 8.7(c)(iii), the fact of the pendency of an objection to a Claim of ERCOT shall not alter the amount to be reserved for a Claim of ERCOT pursuant to section 8.7(c)(iii). If and to the extent that a Disputed Claim becomes an Allowed Claim, on the first Distribution Date that is at least thirty (30) Business Days after such allowance, the Liquidating Trustee shall distribute to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan. If a Disputed Claim is Disallowed, in whole or in part, pursuant to a Final Order, on the first Distribution Date that is at least thirty (30) Business Days after such disallowance, the Liquidating Trustee shall: (a) first, reallocate Cash that had been reserved on account of such Disallowed Disputed General Unsecured Claim to the holders of then Allowed and Disputed Claims in such Class; and (b) second, distribute to each holder of an Allowed Claim in such Class and allocate to the reserves established for remaining Disputed Claims in such Class, Pro Rata, the Cash that has been so reallocated to such Class in accordance with clause (a) of this Section. The Liquidating Trustee, in its reasonable discretion, may increase the amount reserved as to any particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "Disputed General Unsecured Claims Reserve."

**8.8**     **Plan Distributions to Holders of Subsequently Allowed Claims**. On each Distribution Date (or such earlier date as determined by the Liquidating Trustee in its sole discretion), the Liquidating Trustee will make distributions or payments from the applicable Disputed Claims reserve on account of any Disputed Claim that has become an Allowed Claim since the occurrence of the previous Distribution Date. The Liquidating Trustee shall distribute in respect of such newly Allowed Claims the Pro Rata Distributions to which holders of such Claims would have been entitled under this Plan if such newly Allowed Claims were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees, or other direct costs.

**8.9**     **Insurance Preservation and Proceeds**. Nothing in the Plan shall diminish or impair the enforceability of any Insurance Policy that may cover Claims against the Debtors or any related Persons. Notwithstanding anything to the contrary contained herein, to the extent the Debtors have insurance with respect to an Allowed Claim, such Allowed Claim shall (a) be paid from the proceeds of insurance to the extent that the Claim is insured, and (b) receive the treatment provided for herein to the extent the applicable Insurance Policy does not provide coverage with respect to any portion of the Allowed Claim. Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery (or, if applicable, assist the Liquidating Trustee or Debtors, as appropriate, in seeking recovery) under such policies with regard to such Claims.

**8.10**     **Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount

of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**8.11** **No Recourse**. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which, after application of the payment priorities established by this Plan, if there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Liquidating Trustee, the Debtors, the Estates, or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**8.12** **Satisfaction of Claims and Equity Interests**. Unless otherwise provided in the Plan or the Confirmation Order, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete settlement and satisfaction of such Allowed Claims.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1** **Executory Contracts and Unexpired Leases**.   Except with respect to the Insurance Policies, all executory contracts and unexpired leases of the Debtor shall be deemed to be rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease: (x) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; (y) as to which a motion for approval of the assumption and/or assignment of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (z) that is specifically designated as a contract or lease to be assumed and/or assigned by the Debtors. Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date. All Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as General Unsecured Claims.

**9.2** **Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases**. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumption and assignments, and rejections contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code. If certain, but not all, of a contract counterparty's executory contracts and unexpired leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's executory contracts and unexpired leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those executory contracts and unexpired leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their executory contracts and/or unexpired leases must file a timely objection by the deadline to object to confirmation of the Plan on the grounds that their agreements are integrated and not severable.

47

**9.3** **Rejection Claims** In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors and Liquidating Trustee on or before thirty (30) days after the Confirmation Date.

**ARTICLE X**
**EFFECTIVENESS OF THE PLAN**

**10.1** **Conditions to Confirmation**. The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 10.3 of this Plan:

(a) The Debtors shall have sufficient Cash on hand to pay in full, or reserve for, the projected Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims; and

(b) The Bankruptcy Court shall have entered the Confirmation Order.

**10.2** **Conditions Precedent to Effective Date**. The following are conditions precedent to the Effective Date that may be satisfied or waived in accordance with Section 10.3 of this Plan:

(a) The Confirmation Order shall have become a Final Order;

(b) No stay of the Confirmation Order shall then be in effect;

(c) The Liquidating Trustee shall have been appointed and shall have executed and delivered the Liquidating Trust Agreement in form and substance reasonably acceptable to the Debtors and the Creditors' Committee;

(d) The Plan Documents having been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(e) All actions agreements, instruments or other documents necessary to implement the terms and conditions of the Plan are affected or executed and delivered;

(f) All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked; and

(g) The Professional Fee Escrow Account and Disputed Claims Reserves having been fully funded as may be applicable.

**10.3** **Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay**. The Debtors shall have the right, subject to consent by the Creditors' Committee, to waive one or more of the conditions precedent set forth in Sections 10.1 and 10.2 of the Plan at any time

without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan. For the avoidance of doubt, if all conditions precedent of the Plan are satisfied or waived in accordance the immediately preceding sentence, the Effective Date of the Plan may occur. If any condition precedent to the Effective Date is waived pursuant to this Section 10.3 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of the Plan shall foreclose any ability to challenge the Plan in any court. Unless otherwise provided herein, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

**10.4** **Notice of the Effective Date**.  Within five (5) Business Days after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court a notice that informs all parties in interest of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems to be appropriate.

**10.5** **Satisfaction of Conditions**.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously.  If the Debtors decide that one of the conditions precedent set forth in Section 10.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**ARTICLE XI**
**EXCULPATION, INJUNCTION, AND EFFECT OF CONFIRMATION**

**11.1** **Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

**11.2** **Release of Claims Against and Equity Interests in the Debtors**.  Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived and released the Debtors of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Equity Interests and their affiliates shall be forever precluded and enjoined from prosecuting or asserting any such waived and released Claim against or terminated Interest in the Debtors. Nothing in this Section shall preclude any holder of an Allowed Claim or Equity Interest from receiving the applicable Distribution provided for under the Plan.

**11.3** **Term of Injunctions or Stays**.  Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Bankruptcy Cases under section 105 or 362

49

of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Bankruptcy Cases.

**11.4    Injunction Against Interference with Plan**.  Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**11.5    Injunction**.

(a)    Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors or their Estates are, with respect to any such Claims or Equity Interests, permanently enjoined from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidating Trustee, the Creditors' Committee, the Estates, or any of their respective property; (ii) enforcing, levying, attaching (including, without limitation, any pre- judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Liquidating Trustee, the Creditors' Committee, the Estates, or any of their respective property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidating Trustee, the Creditors' Committee, or the Estate; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

(b)    Each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.

**11.6    Exculpation and Limitation of Liability**. None of the Debtors, the Liquidating Trustee, the Creditors' Committee, nor any of their respective members, officers, directors, employees, advisors, professionals, independent contractors, or agents, (collectively, the "Exculpation Parties") shall have or incur any liability to any holder of any Claim or Equity Interest for any postpetition act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation the negotiation and execution of the Plan, the Bankruptcy Cases, the Disclosure Statement, the solicitation of votes for and the pursuit of the Plan (including that solicitation of acceptances of the Plan was not conducted in good faith nor in compliance with the applicable provisions of the Bankruptcy Code), the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of the Plan except gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court. For purposes of the foregoing, it is expressly understood that any act or

omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation. The Debtors and the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Bankruptcy Cases, the Plan, and the administration thereof.

**11.7**    <u>**Injunction Related to Releases and Exculpation**</u>. The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this ARTICLE XI of the Plan.

**11.8**    <u>**Termination of Subordination Rights and Settlement of Related Claims**</u>. Except as expressly provided herein, the classification and manner of satisfying all Claims and Equity Interests and the respective distributions, treatments and other provisions under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a) and 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to the Plan. Any disagreement with the priorities or distributions set forth in the Plan or any right to assert contractual subordination shall be raised on or prior to the deadline to object to the Plan, and decided at or prior to the Confirmation Hearing, and all issues with respect to contractual subordination not raised or resolved at the Confirmation Hearing shall be governed pursuant to the Plan or, if the decision of the Bankruptcy Court at the Confirmation Hearing differs from the Plan, then such decision shall govern.

**11.9**    <u>**Release of Liens**</u>. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, in consideration for the Distributions granted hereunder, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of any of the Estates shall be fully released and deemed satisfied and the Liquidating Trust shall succeed to all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest. On the Effective Date, the holder of each such mortgage, deed of trust, lien, pledge or other security interest against property of the Estate shall be deemed to have appointed the Liquidating Trustee as agent to such holder for the purpose of filing and recording all releases with respect to each such mortgage, deed of trust, lien, pledge, or other security interest held against property of the Estates.

**ARTICLE XII**
<u>**RETENTION OF JURISDICTION**</u>

**12.1**    <u>**Jurisdiction of Bankruptcy Court**</u>. The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Bankruptcy Cases and the Plan pursuant

to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

   (a) To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

   (b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding to recover a Cause of Action, and Avoidance Actions;

   (c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

   (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

   (e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

   (f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

   (g) To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

   (h) To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

   (i) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

   (j) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Liquidating Trust Agreement, and to hear and determine all matters involving or relating to the Liquidating Trustee;

   (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     To recover all assets of the Debtors and property of the Estate, wherever located, which jurisdiction shall not be limited as a result of the transfer of such assets and property to the Liquidating Trust pursuant to the Plan;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To hear and determine any pending adversary proceedings as of the Effective Date; and

(q)     To enter a final decree closing the Bankruptcy Cases.

## ARTICLE XIII
## CRAMDOWN RESERVATION

**13.1     Nonconsensual Confirmation**.  If any impaired class votes to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any Impaired class is deemed to have rejected the Plan, the Debtors reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(c) of the Bankruptcy Code and/or amend the Plan to the extent necessary to obtain entry of a Confirmation Order.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**14.1     Dissolution of Creditors' Committee**.  The Creditors' Committee shall dissolve on the Effective Date.

**14.2     Substantial Consummation**.  On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**14.3     Exemption from Transfer Taxes**.  Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**14.4**   **No Discharge of Claims**.  For the avoidance of doubt, notwithstanding any other provision of this Plan, neither confirmation nor substantial consummation of the Plan shall result in the Debtors receiving a discharge under section 1141(d) of the Bankruptcy Code.

**14.5**   **Modification of Plan**.  The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of Holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, *provided* that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Equity Interests.

**14.6**   **Revocation or Withdrawal of Plan**.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Debtors take such action, the Plan shall be deemed null and void.

**14.7**   **Courts of Competent Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**14.8**   **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of each Debtor shall govern corporate or other governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**14.9**   **Exhibits**.  All exhibits to the Plan and Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full herein.

**14.10**   **Successors and Assigns**.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**14.11**   **Time**.  The provisions of Bankruptcy Rule 9006 shall apply when computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court.

**14.12**   **Notices**.  All notices, requests and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been

duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtors:

> [Name of Debtor, as applicable]
> C/O Baker & Hostetler LLP
> Attn: Elizabeth A. Green, Esq.
> P.O. Box 112
> Orlando, FL 32802-0112
> Telephone:    407-649-4000
> Fax:    407-841-0168

If to the Creditors' Committee:

> C/O McDermott Will & Emery LLP
> Attn: Charles Gibbs, Esq.
> 2501 North Harwood Street, Suite 1900
> Dallas, TX 75201
> Telephone: 214-295-8063
> Facsimile: 972-232-3098

> C/O McDermott Will & Emery LLP
> Attn: Darren Azman, Esq.
> One Vanderbilt Avenue
> New York, NY 10017-3852
> Telephone:  212-547-5400
> Facsimile:  212-547-5444

All notices to the Liquidating Trustee, shall be delivered to the address provided in the Plan Supplement.

**14.13   Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Dated this 10th day of November 2021.          Respectfully submitted,

**Entrust Energy, *et al.***

By: */s/ C. Alexis Keene*
Name:  C. Alexis Keene
Title:  President, CEO and Secretary